FAY, Circuit Judge:
The appellant, George Echols, appeals from his conviction of knowingly causing the interstate transportation of obscene matter under 18 U.S.C. § 1462[1] and 18 U.S.C. § 2.[2] He assigns two errors on appeal. The first assignment alleges that the trial court erred in overruling the appellant’s motion to dismiss because 18 U.S.C. § 1462 allows for the seizure of films alleged to be obscene and to have traveled in interstate commerce without providing for an adversary hearing on the question of obscenity before or after the arrest and seizure. The second assignment of error alleges that the seizure of the films was done in violation of the Fourth Amendment. We find no merit in either of these contentions and affirm.
The relevant facts in this case can be set forth briefly. On April 1, 1975, films were seized by officers of the Federal Bureau of Investigation from two theatres owned by the appellant. These officers were acting pursuant to a search warrant. The basis for the issuance of the search warrant was an affidavit explicitly describing the contents of some of the films. The affidavit also set forth information regarding the transportation of these films in interstate commerce. The only reason that such information was known by the affiant was that he had earlier accompanied officers of the local police department in a search of one of the theatres. As an observer during this search, the affiant saw and took note of air bills, airline stickers and stamps on various film cannisters which indicated that the films had traveled in interstate commerce. Soon after the seizure of the films, the appellant was indicted. For a variety of reasons, however, the trial did not take place until July of 1977. On July 11, 1977, after a three day jury trial, the appellant was convicted on two counts of a three count indictment.
The principal argument of the appellant is that there was a 497 day delay between the seizure of films and trial, and, as a result, there was a 497 day delay *310 before any judicial determination of obscenity was made regarding the seized films. According to the appellant, such a delay violates the First Amendment and denied him procedural due process under the Fifth Amendment. The appellant argues that the Supreme Court’s decision in Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), governs this situation in that it requires any system of censorship to have certain protections including an assurance that any censorship prior to a judicial determination will be imposed only briefly, and that the burden will be on the censor to go to court within a specified brief period of time and establish the obscenity of the seized material.
We feel that Freedman is inapposite to the facts in the case before us. We are convinced that this case is controlled by the Supreme Court’s decision in Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), which dealt with the seizure of one copy of a film for use as evidence in a criminal trial. In Heller, the Supreme Court said:
This Court has never held, or even implied that there is an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized. ... In particular, there is no such absolute right where allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution.
Id. at 488, 93 S.Ct. at 2792.
The relevant films in this case were seized and held as evidence in a criminal prosecution for interstate transportation of obscene matter. No attempt was made by the federal government to stop the showing of any particular film. Rather, in this case, the seizures of the films were for evidentia-ry purposes only — not censorship purposes — and the appellant, if he had other copies of the seized films, could have continued running these films. Thus, this is not a situation where the films were seized in order to destroy them or to block their exhibition. Instead, this is a situation where single copies of films were seized for the bona fide purpose of preserving them as evidence in a criminal proceeding. As explained in Heller:
If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding.
Id. at 492, 93 S.Ct. at 2795.
Admittedly, seizures of films for eviden-tiary purposes can have a censorship effect if no other copies are available. A prompt post seizure determination of the obscenity question must be available “at the request of any interested party” in order for such a seizure to be constitutional. In this case, an adversary hearing to review the correctness of the seizure was available in the form of a standard pretrial motion to return seized property as authorized by Fed.R.Crim.P. 41 or a motion to quash as authorized by Fed. R.Crim.P. 12. See, e. g. United States v. Sherwin, 539 F.2d 1, 9 (9th Cir. 1976). The appellant, however, at no time filed a motion to have a judicial determination of the obscenity question prior to trial, nor did he ask the court to allow him to copy the seized films. Thus, this case is much like the situation in Heller which prompted the Supreme Court to explain:
[T]he barrier to a prompt judicial determination of the obscenity issue in an adversary proceedings was not the State, but petitioner’s decision to waive pretrial motions and reserve the obscenity issue for trial.
413 U.S. at 490 — 491, 93 S.Ct. at. 2794.
A prompt determination of the obscenity issue prior to trial was available to the appellant. The appellant waived his right *311 to such a determination by failing to request it via standard motion practice. If, in fact, the seizure of this evidence had an indirect censorship effect, the blame for its continued duration must rest on the shoulders of the appellant.
 The second error raised by the appellant challenges the validity of the search warrant for one of the seized films. The appellant claims that the fact that the film was shipped in interstate commerce was crucial to the issuance of the warrant for its seizure. This fact was established only because the federal investigator had observed various airline stickers and air bills while accompanying the local police department in their search of the theatre. The federal agent’s presence was not specifically authorized by the state warrant. The appellant argues that the federal agent’s presence was part of a calculated search for evidence of federal crime which could not be done without a federal search warrant. We reject the appellant’s argument. The appellant nowhere attacks the validity of the state search warrant. The sole issue presented is whether the federal agent could lawfully be present during the proper execution of that warrant. This Court has previously answered this question in the affirmative, and we have emphasized that we do not in any way wish to discourage cooperation between federal and state law enforcement officers. United States v. Sellers, 483 F.2d 37, 44 (5th Cir. 1973). There is one other reason why the trial court properly denied the appellant’s motion to suppress the film in question. The appellant’s motion came over one year after the trial court had set pretrial motions to be heard and just six days before trial. The facts upon which the motion was based were apparent on the face of the search warrant issued over two years prior to the date that the motion was filed. Accordingly, it was in the trial court’s discretion to hold that the motion had not been timely raised as required by Fed.R.Crim.P. 12(f).
The judgment of the district court is AFFIRMED.

. 18 U.S.C. § 1462 provides:
Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—
(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or
(b) any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound; or
Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—
Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

. 18 U.S.C. § 2 provides:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.