Katherine Ann WILEY, by next friend, David Wiley, and wife, Ann Wiley, Plaintiffs,

v.

John P. FRANKLIN, Corley R. Young, Mrs. C. M. Hooper, Rev. H. H. Battle, John David Kling, James L. McClanahan, E. S. Proctor, Jr., Members of the Board of Education of the City of Chattanooga, Tennessee; and The Board of Education of the City of Chattanooga, Tennessee, Defendants.

Nancy SCHWARTZ, by next friend, Jack Wilkinson and Leah Mary Franke, by next friend, Robert E. Franke and wife, Dorothy Franke, Plaintiffs,

v.

James L. DOBSON, Jr., H. D. Duggan, Robert L. Frederick, James W. Hartley, John K. Witherspoon, Mrs. Helen W. Perry, Fred R. Skillern, Members of the Board of Education of Hamilton County, Tennessee; and The Board of Education of Hamilton County, Tennessee, Defendants.

Nos. CIV–1–78–1, CIV–1–78–2.

United States District Court, E. D. Tennessee, S. D.

Sept. 5, 1980.

John L. Alley, Hixson, Tenn., for plaintiffs.

Randall L. Nelson, Asst. City Atty., Eugene N. Collins, City Atty., Chattanooga, Tenn., Ward Crutchfield, Asst. County Atty., Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, Tenn., for defendants.

## OPINION

FRANK W. WILSON, Chief Judge.

These two related lawsuits present First Amendment constitutional issues with regard to certain Bible study courses taught in the public elementary schools of the City of Chattanooga and Hamilton County, Tennessee. The lawsuits had their origin in 1978 when the plaintiffs, students and parents of students, initiated the action seeking to enjoin the further teaching of Bible study courses in the City and County elementary schools as those courses had been taught since 1922. The history of this litigation is set forth in this Court's prior opinions in Wiley v. Franklin, 468 F.Supp. 133 and 474 F.Supp. 525.

In its initial opinion [see Wiley v. Franklin, 468 F.Supp. 133 (1979)], the Court concluded that the Bible study courses as conducted and taught in the school year 1978–1979 and in prior years were in violation of the religious freedom clause of the First Amendment to the United States Constitution. The Court accordingly enjoined the teaching of such courses. However, in view of the uniform contention of all parties to the litigation and the uniform testimony of all witnesses introduced at the trial that a legally permissible secular Bible study course would be academically and educationally desirable, rather than enjoin all further efforts at establishing legally permissible Bible study courses, the Court proceeded to identify the legal guidelines for the structuring and teaching of such courses and afforded each party the opportunity, if they should so elect, to submit plans, policies and curricula changes in accordance with such guidelines. Proposals and counter proposals having been submitted by the parties, the Court considered these in a further opinion [see Wiley v. Franklin, 474 F.Supp. 525 (1979)] and approved with modifications the plans and curricula as submitted by the respective Boards of Education. Recognizing that the ultimate test of the constitutionality of any course of instruction founded upon the Bible must depend upon classroom performance, the Court retained jurisdiction over the parties and over the cases for the initial instructional year under the revised plans and curricula. No appeal was taken from these prior decisions of the Court.

The present action was initiated by the plaintiffs having filed a motion during the 1979–1980 school year seeking either the monitoring or the enjoining of the Bible study courses. The Court thereupon ordered the monitoring of the courses to the extent of recording not less than one regularly scheduled Bible class teaching session for each of the three Bible teachers within the City School System and for each of the ten Bible teachers within the County School System. Tape recordings of these 13 teaching sessions were thereupon taken and filed with the Court.[1] Each of the parties also

1. Transcripts of six of the 13 tapes have been filed in the court records. The Court has ordered the filing of transcripts of the remaining seven tapes.

filed various motions, affidavits and exhibits in which conflicting contentions were made with regard to the adequacy of the teacher selection and training procedures followed by the respective Boards of Education and with regard to the Constitutionality of the revised Bible study program. Included within the affidavits and counter affidavits submitted were evaluations made by academicians of the tapes of the teaching sessions. The parties thereupon agreed to submit the cases for decision by the Court upon the basis of the record as thus established.

■ The substance of the plaintiffs' objection to the teacher selection and training procedures followed by the respective Boards of Education under the present Bible study program is (1) that one of the three[2] teachers employed by the City School Board and four of the ten teachers employed by the County School Board taught Bible study courses under the previously enjoined Bible study program; (2) that other teachers employed have had educational training in colleges having an evangelical Christian background; and (3) that the portion of teacher training devoted to legal instruction upon the First Amendment was performed by defense counsel. In its previous opinion in this case the Court found the defendants' former practice of delegating to a private fund raising agency, the Bible Study Committee, the selection and training of Bible study course teachers to be in violation of the Establishment of Religion Clause of the First Amendment. The Court set forth in that opinion the following guidelines as being essential minimum standards for the employment and training of teachers in any revised Bible study course plan:

"(1) Establish uniform minimum standards for the selection and employment of persons teaching Bible study courses in the elementary grades, which standards shall specifically exclude as a condition of selection for employment any religious test, any profession of faith or any prior or present religious affiliation.

"(2) Establish a procedure for the release and replacement of all teachers currently teaching Bible study courses in the elementary grades who do not meet the minimum standards adopted pursuant to paragraph (1) above, such release and replacement to be accomplished within a period of 30 days after the Court shall have approved the uniform minimum teacher standards.

"(3) Establish a plan whereby the school board or some duly designated school staff member or other school personnel shall, without participation by any non-school person or organization, select and employ all Bible study course teachers and effect the placement, training and supervision of all such teachers." 468 F.Supp. 133 at 152.

Having reviewed the record now before the Court as it pertains to the employment and training of teachers, the Court finds that the foregoing guidelines were followed by each defendant School Board in the selection and training of each Bible study course teacher. While the record does reflect that one of the City teachers had performed graduate work in a Baptist Theological Seminary and five of the County teachers had done undergraduate or graduate work in Bible colleges or church sponsored institutions of higher learning, the record does not reflect that the criteria for employment used by either defendant included any religious test or profession of faith. To exclude persons from employment by reason of a particular faith or religious educational background would be as impermissible a religious test as to require such a faith or religious educational background.

■ The principal thrust of the plaintiffs' present objections to the Bible study courses as currently taught is the content of the lessons as reflected in the 13 tapes of

---

**2.** A fourth teacher referred to in the record, a Mrs. Harriet Bond, does not teach in the elementary schools.

classroom sessions. As previously noted, each party has submitted affidavits and counter affidavits of academicians who have listened to some or all of the tapes and who have expressed conflicting opinions as to either or both the academic worth of lack of worth of the lessons and/or the religious or secular content of the lessons. To the extent that the affidavits address the subject of the academic approval or disapproval of the lessons, these are matters that, while they may be deserving of consideration by appropriate school authorities, are nevertheless beyond the scope of the Constitutional issue here presented and thus beyond the function of the Court in these lawsuits. While the above referred to affidavits are of assistance to the Court, they do not relieve the Court from making a careful review of the content of each lesson and from making its own evaluation of the permissible or impermissible content of each lesson in light of appropriate Constitutional standards. As defined in the Court's former opinions in these lawsuits, those Constitutional standards include the following:

"For a Bible study course offered in public schools to be Constitutionally permissible under the First Amendment Establishment Clause, the following tests must be met: (a) the nature, intent and purpose of the course must be secular; (b) the primary effect of the course must neither advance nor inhibit religion; and (c) the course must be offered in a manner that avoids excessive entanglement between government and religion." 468 F.Supp. 133 at 146.

\* \* \* \* \* \*

"The ultimate test of the constitutionality of any course of instruction founded upon the Bible must depend upon classroom performance. It is that which is taught in the classroom that renders a course so founded constitutionally permissible or constitutionally impermissible. If that which is taught seeks either to disparage or to encourage a commitment to a set of religious beliefs, it is constitutionally impermissible in a public school setting. If that which is taught avoids such

religious instruction and is confined to objective and non–devotional instruction in biblical literature, biblical history and biblical social customs, all with the purpose of helping students gain 'a greater appreciation of the Bible as a great work of literature' and source of 'countless works of literature, art and music' or of assisting students acquire 'greater insight into the many historical events recorded in the Bible' or of affording students greater insight into the 'many social customs upon which the Bible has had a significant influence', all as proposed in the Curriculum Guide, no constitutional barrier would arise to such classroom instruction." 474 F.Supp. 525 at 531.

Bearing in mind the foregoing Constitutional guidelines, as well as all of the Constitutional principles set forth in its former opinions in these lawsuits, the Court has reviewed the tapes of each of the three Bible classes taught by teachers within the City School System.

One lesson was a narrative story told by the teacher to a third grade class of the Israelites' capture of the walled city of Jericho under the leadership of Joshua. The story was placed in a historical time frame and was told without biblical readings. The lesson was accompanied by the display of pictures of the city and by class participation in the making of a model of a walled city and the singing of the song "Joshua Fit the Battle of Jericho".

The topic of the second lesson was the parable of the talents. The subject of the lesson was introduced to the third grade class by reference to one of Aesops' fables, with a parable being compared with the fable as a method of teaching. Jesus was identified as a teacher and the disciples were identified as his followers or his students. The Bible course teacher then recounted in narrative form the parable of the master who entrusted varying numbers of talents to his servants and who praised or condemned the servants in accordance with how they had used or concealed their talents. The lesson closed with the students participating in a re–enactment of

the parable, with a concluding emphasis being placed upon the idea behind the parable that "practice makes perfect" and that a student's talents grow only as they are used.

The third lesson was a narrative story told by the teacher to a fourth grade class about Saul and David. Once again the story was placed in a historical time frame and was told without biblical readings. As related, the story was a secular account of the establishment of the Kingdom of Israel, first under Saul, then under David, and of both the friendship and enmity between these early leaders of the Jewish nation. The lesson was accompanied by the display of a map of the area under discussion, with reference being made to the current efforts of modern day Israel to re—establish boundaries corresponding to those established by King David.

From its review of the lessons from the Bible as taught by the teachers in the elementary schools of the City, the intent and purpose of the lessons appear to be secular. Their primary effect appears neither to advance nor to inhibit religion. They appear to be non—devotional instruction in biblical history or biblical literature. The Court is accordingly of the opinion that the lessons include no Constitutionally impermissible religious instruction.

█ The Court has likewise reviewed the tapes of each of the ten Bible classes taught by teachers within the County School System. However, the Court will here restrict its discussion to the contents of three of those tapes, as the contents of those three lessons are believed to be of such a nature as to be decisive of the Constitutional issue here presented.

One of the first grade lessons consisted of a narrative story of an episode from the book of Daniel. The episode related to the occasion upon which the Babylonian king, Belshazzar, called upon the Jewish exile, Daniel, to interpret the handwriting that mysteriously appeared upon a wall during the course of a royal celebration. As recounted in the lesson, Daniel instructed Belshazzar that his father, King Nebuchadnez-

zer, had been rendered a madman because of his wickedness, to be restored to sanity only when he acknowledged that the Supreme God controlled all kingdoms. Daniel then proceeded to instruct Belshazzar that he had not learned from this lesson, but had himself acted against the Lord of Heaven and had prayed to gods made of wood and stone and bronze, thus dishonoring the Supreme God, who determines whether people live or die. For this wickedness God had sent the hand to write upon the wall, the meaning of the writing being that God had numbered the days of Belshazzar and his kingdom was to come to an end and be given unto the Persians and the Medes. The lesson concluded with Daniel's prophecy being fulfilled that very evening.

A second lesson consisted of a narrative story of an episode from the Book of Exodus given before a joint second and third grade class in which lesson it was explained that Moses received instructions from God as to the details of building and furnishing a tabernacle. The inner room of the tabernacle was to contain the ark of the covenant and to be the place where God dwelled among the Israelites. In the absence of Moses while receiving these instructions from God, the Israelites resorted to the worship of a golden calf. For this idolatry God threatened to destroy them but was dissuaded from doing so by Moses. The lesson concluded with the suggestion that the children of Israel were good builders.

A third lesson consisted of a narrative story from the Book of Genesis given before a first grade class in which lesson an account was given of Abraham and his nephew Lot, the story culminating in the destruction of Sodom and Gomorrah. After recounting that Abraham and Lot had separated due to the shortage of pasturage for their flocks, Lot settled in Sodom. Abraham remained in the more mountainous country and God promised that all of the land within the range of Abraham's vision would become his and his descendents forever. The lesson then continued by reciting that Abraham was visited by three angels in human form who advised Abraham that

God was going to destroy Sodom and Gomorrah for their wickedness. Knowing that Lot lived in Sodom, Abraham interceded with God to spare the cities, to which God agreed provided as few as ten good people could be found in the cities. When the angels were unable to find even so few as ten righteous people in Sodom and Gomorrah, they succeeded only in getting Lot and his family to leave before the cities were destroyed by fire and brimstone. Contrary to God's directions, Lot's wife looked back as she was leaving Sodom, with the result that she was turned into a pillar of salt.

From its review of the foregoing three lessons from the Bible as taught by teachers in the elementary schools of the County, the Court can only conclude that the intent and purpose of the lessons would be to convey a religious message rather than to convey a literary or historical message. The Court cannot say that the primary effect of the lessons would be neither to advance nor to inhibit religion. Rather, it would appear that the primary effect of the lessons would be to promote religious beliefs, and not to convey biblical literary, historical, or social incidents, themes, or information in a non—religious or secular manner. The Court accordingly concludes that the lessons are Constitutionally impermissible in a public school setting in that they are in violation of the Establishment of Religion Clause in the First Amendment of the United States Constitution.

Having concluded that three of the Bible study lessons as taught in the County schools were impermissibly religious in nature, it becomes unnecessary for the Court to here recite its review of the remaining seven lessons as monitored in the County schools. That the teaching of religion may not have pervaded the remaining seven lessons monitored is no defense and would provide no basis for permitting the continuance of the Bible study courses in the County schools, for as stated by the Court in the case of *Abington School District v. Schempp*, 374 U.S. 203 at 225, 83 S.Ct. 1560 at 1573, 10 L.Ed.2d 844 (1963):

"Further, it is no defense to urge that the religious practices here may be relatively minor encroachments upon the First Amendment. The breach of neutrality that is today a trickling stream may all too soon become a raging torrent; and in the words of Madison, 'It is proper to take alarm at the first experiment on our liberties.' . . ."

The Court having found no First Amendment violation in the Bible study courses as taught and conducted in the public elementary schools of the City of Chattanooga, Tennessee, the plaintiffs' motion in *Wiley, et al. v. Franklin, et al.*, 468 F.Supp. 133 (1979), to enjoin that program will be denied. The Court having found First Amendment violations in the Bible study courses as taught in the public elementary schools of Hamilton County, Tennessee, the plaintiffs' motion in *Schwartz, et al. v. Dobson, et al.*, 468 F.Supp. 133 (1979), to enjoin that program will be granted.