Rufus O. HALL, et al.,
Plaintiffs-Appellants,

v.

BOARD OF SCHOOL COMMISSIONERS
OF CONECUH COUNTY, et al.,
Defendants-Appellees.

No. 80–7302.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 21, 1981.

Blacksher, Menefee & Stein, Larry T. Menefee, Mobile, Ala., for plaintiffs-appellants.

Robert D. Segall, Montgomery, Ala., for Anti-Defamation League of B'Nai B'Rith.

Robert G. Kendall, Mobile, Ala., for defendants-appellees.

Before MORGAN, RONEY and KRAVITCH, Circuit Judges.

RONEY, Circuit Judge:

Rufus Hall, a resident of Conecuh County, Alabama, individually and on behalf of his children enrolled in the Conecuh County public school system, brought suit under 42 U.S.C.A. § 1983 challenging two activities at Repton High School as being violative of the Establishment Clause of the First Amendment of the Constitution: (1) permitting students to conduct morning devotional readings over the school's public address system, and (2) teaching an elective Bible Literature course in a manner which advanced religion.

The district court after trial dismissed the action as moot because defendants had voluntarily ceased the morning devotionals after learning a lawsuit was going to be filed and because the Bible Literature course was not then being taught at Repton High School. Despite this jurisdictional holding, the court made findings of fact on the merits of plaintiffs' claims and concluded that the morning devotionals were unconstitutional, but that plaintiffs failed to prove that the Bible Literature course was taught in a way that advanced religion. The court further ruled that plaintiffs were not entitled to attorney's fees as prevailing parties under 42 U.S.C.A. § 1988.

On appeal we hold the action is not moot, the practices complained of violate the Establishment Clause, and plaintiffs are entitled to declaratory and injunctive relief.

## Morning Devotionals

■ Everyone seems to be in substantial agreement that the conducting of morning devotionals was unconstitutional under established law. *See School District of Abington Township v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Meltzer v. Board of Public Instruction*, 577 F.2d 311 (5th Cir. 1978) (*en banc*), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). The district court so held, and the defendants state they have discontinued the practice. The critical issue here is whether the plaintiffs were entitled to some affirmative relief. We think they were.

Defendants permitted the longstanding practice to continue until the filing of this lawsuit was imminent in 1979, despite the fact that such religious readings in public schools were declared unconstitutional as early as 1963. *See School District of Abington Township v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). Defendants disputed the constitutionality of the practice up to the day of trial, when defense counsel for the first time indicated they had no intention of reviving the devotionals. Although the superintendent of schools testified he was aware the activity was unconstitutional and had so advised the various school principals, no further attempt had been made to ensure the practice had been discontinued in all Conecuh County schools.

■ The recognized rule is that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e.*, does not make the case moot." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Jurisdiction may abate if there is no reasonable expectation the alleged violations will recur and if inter-

vening events have completely and irrevocably eradicated the effects of the alleged violations. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *City of Waco v. Environmental Protection Agency*, 620 F.2d 84, 87 (5th Cir. 1980). To defeat jurisdiction on this basis, however, defendants must offer more than their mere profession that the conduct has ceased and will not be revived. *See United States v. W. T. Grant Co.*, 345 U.S. at 632–33, 73 S.Ct. at 897.

■ Under the circumstances in this case, the action was not mooted by defendants' cessation of the morning devotionals and the plaintiffs were entitled to injunctive relief that would be binding upon the institutions, regardless of changes in personnel.

### Bible Literature Course

■ The Bible Literature course was not being taught at the time of trial. Testimony at trial was, however, that the course was not offered during the 1979–1980 school year because of scheduling problems, not because of admitted unconstitutionality, as with the morning devotionals. Defendants did not argue to the trial court that the issue was moot, but vigorously asserted the validity of the course. They did not intimate an intention not to offer the course in the future. Under the above stated law, the district court erred in dismissing the challenge to this course as moot.

The district court made findings of fact and conclusions of law on the merits of plaintiffs' claims, perhaps anticipating the possibility of reversal on the mootness question. Based upon the district court's own findings, which neither party challenges on appeal, it appears that it erred in deciding the course as taught did not violate the Constitution under the established law on this subject.

The district court found as follows:

5. The State of Alabama, through the State Board of Education has approved a course entitled "Bible Literature" as an elective to be offered at the option of the individual schools. The course offering was formulated through procedures outlined for the State Courses of Study Committee. Ala.Code §§ 16–36–1 to 16–36–5.

6. The Bible Literature course utilizes a state approved textbook entitled *The Bible for Youthful Patriots, Parts I and II*. The textbook is approved through the procedures of the State Textbook Committee. Ala.Code §§ 16–36–1 to 16–36–5. The book was written and published by E. B. Warren of Orrville, Alabama, and Sadie Caine of Selma, Alabama, in 1971.

7. According to the principal *Holy Bibles* were issued to students in the Bible Literature class who did not have a *Bible* but who desired one. The *Bible* issued to James Hall bore the inscription "Presented to James Hall by Repton High School." The *Bibles* were provided by Mrs. William R. Carter, an interested, local citizen.

8. The only reading materials or "text" assigned in the Bible Literature course were from the state approved textbook and the *Bible.*

9. The Bible Literature course was taught by Burt Wiggers in Repton High School for the first time in the 1978–79 school year. Mr. Wiggers is an ordained Baptist minister and has a congregation near Evergreen, Alabama. Mr. Wiggers has been a duly qualified teacher at Repton High School for approximately ten (10) years.

10. The Bible Literature course consisted entirely of a Christian religious perspective and within that a fundamentalist and/or evangelical doctrine. Although there appears to be no requirement that any particular translation or version of the *Bible* be used, the King James version has been most frequently used. . . .

11. Plaintiffs called two expert witnesses from the English faculty at the University of South Alabama, Mr. Charles Harwell and Dr. Daniel McDonald. They testified that the course materials, including the textbook, suggested a strong religious motivation as opposed to literary study on the part of

the defendants; that the materials reflect a fundamentalist, evangelical, protestant perspective; that the primary effect of a course of study based on these materials would be to advance or study religion rather than the literary value of the *Bible.*

12. This Court must further observe that, without exception, all of the parties and witnesses appearing in this litigation are devoutly committed to the Christian faith. Paraphrasing the Supreme Court in *Committee for Public Education v. Nyquist,* 413 U.S. 756 n. 53 [93 S.Ct. 2955 n. 53, 37 L.Ed.2d 948] (1973), this litigation is, in essence, a conflict between two groups of extraordinary good will and civic responsibility. One group fears the increased secularization of our society. The other group, equally dedicated, believes that encroachment of government in aid of religion is as dangerous to the secular state as is encroachment of government through attempts to restrict the free exercise of religion. All parties concede that a properly designed course in Bible Literature could pass constitutional muster. Indeed, the expert witnesses offered by plaintiffs are authors of a recognized text in the field and regularly teach courses in Bible Literature at the University of South Alabama.

These findings of fact cannot be squared with a decision that use of the textbook was not a violation of the Constitution. The district court in its conclusions acknowledged that "[t]he use of the textbook, with its fundamentalist perspective, comes close to being a per se violation of the establishment clause."

█ The Establishment Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, *e. g., Schempp,* 374 U.S. at 215, 83 S.Ct. at 1567; *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940), provides that a state "shall make no law respecting an establishment of religion." To pass muster under the Establishment Clause, the governmental activity must, first, reflect a clearly secular governmental purpose; second, have a primary effect that

neither advances nor inhibits religion; and third, avoid excessive government entanglement with religion. *Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 773, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973). *See Schempp,* 374 U.S. at 222, 83 S.Ct. at 1571.

The parties agree that study of the Bible in public schools is not per se unconstitutional. The Supreme Court in *Schempp,* while holding that the daily reading of ten verses of the Bible without comment was unconstitutional, was careful to note:

It certainly may be said that the Bible is worthy of study for its literary and historic qualities. Nothing we have said here indicates that such study of the Bible or of religion, when presented objectively as a part of a secular program of education, may not be effected consistently with the First Amendment.

374 U.S. at 225, 83 S.Ct. at 1573. Under *Nyquist,* the issue is whether the Bible Literature course taught at Repton was sufficiently secular in nature to survive constitutional scrutiny. If it had as either its primary purpose or effect the advancement of religion, or involved excessive government entanglement with religion, it cannot be upheld. *See Wiley v. Franklin,* 468 F.Supp. 133 (E.D.Tenn.1979).

█ Even assuming an *intention* to restrict the course to secular studies, however, the findings clearly indicate the primary effect was the advancement of religion. The district court found the course "consisted entirely of a Christian religious perspective and within that a fundamentalist and/or evangelical doctrine." A casual review of the state approved textbook for the course, *The Bible for Youthful Patriots,* reveals a fundamentalist Christian approach to the study of the Bible devoid of any discussion of its literary qualities. Plaintiffs' expert witnesses, both professors of Bible or Christian Literature at the University of South Alabama, testified that the primary effect of a course of study based on these materials would be to advance or study religion rather than the literary value

of the Bible. Although the textbook was not issued to the students and apparently was used only as a supplement to the Bible, the book was available in the classroom and assignments were made in it.

The only other book used in the class was the Bible. Donated King James Bibles were presented to students who did not have a Bible but who desired one "by Repton High School." The instructor of the course, a fully qualified literature teacher with ten years experience at Repton, was an ordained Baptist minister with a congregation in Conecuh County. Although the instructor testified he used a recognized and respected teaching guide on the Old Testament as Literature in preparing for the course, both expert witnesses opined that the examinations given in the course, primarily requiring rote memorization of the Bible, were not consistent with the course methodology outlined in the guide.

The district court erred in not concluding that the primary effect of the course was to advance fundamentalist Christianity, clearly a violation of the Establishment Clause. The district court on remand is instructed to fashion appropriate declaratory and injunctive relief designed to prohibit use of *The Bible for Youthful Patriots* in the school and to ensure that any future course is taught within a secular framework focusing on the literary or historical aspects of the Bible, not the religious aspects.

### Attorney's Fees

In light of our disposition of the case, we need not address plaintiffs' contention that even if the case were moot they would still be entitled to attorney's fees. On remand the court should award plaintiffs' appropriate attorney's fees as prevailing parties under 42 U.S.C.A. § 1988. Any such award should include compensation for prosecution of this appeal.

REVERSED AND REMANDED WITH INSTRUCTIONS.