**FIRST COLONY LIFE INSURANCE COMPANY, et al., Plaintiffs,**

v.

**LFC RESOLUTION PAYMENT FUND, LTD., et al., Defendants.**

No. Civ.A. 3:98–CV–0868G.

United States District Court,
N.D. Texas,
Dallas Division.

May 14, 1999.

Andrew Chesnut Whitaker, Figari & Davenport, Dallas, TX, for plaintiffs.

Vincent Paul Slusher, Snell Brannian & Trent, Dallas, TX, for defendants.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court is the motion of the defendant Settlement Capital Corporation ("SCC") to dismiss this case for lack of subject matter jurisdiction. Also before the court is SCC's supplemental motion to dismiss the case on the grounds of mootness. For the following reasons, SCC's supplemental motion to dismiss is granted.

### I.  BACKGROUND

On October 6, 1981, the defendant Jimmy Lee Watkins, Jr. ("Watkins") fell five stories into an elevator shaft while on the job at Martin Industries ("Martin") and suffered T–12 paraplegia as a result. *See* Amended Complaint ¶ 9. Watkins sought workers' compensation benefits from the plaintiff St. Paul Fire and Marine Insurance Company ("St.Paul"), which was Martin's workers' compensation carrier. See *id.*

On July 13, 1988, Watkins and St. Paul entered into a Compromise Settlement Agreement (the "Settlement Agreement") regarding Watkins's workers' compensation claim. See *id.* Under the Settlement Agreement, St. Paul agreed to purchase an annuity on Watkins's behalf paying him $669.92 per month for the duration of his life. See *id.* Pursuant to the Settlement Agreement, St. Paul purchased from the plaintiff First Colony Life Insurance Company ("First Colony") a Nonrefund Single Premium Immediate Life Annuity Contract (the "Annuity Contract") designating St. Paul as the owner and Watkins as payee and providing for monthly payments of $669.92 for the duration of Watkins's life. *See* Annuity Contract, attached as Exhibit A to Amended Complaint.

In December 1995, Watkins entered into a Purchase and Sale Agreement with SCC (the "Purchase Agreement"), by virtue of which Watkins purported to transfer certain of his rights to future monthly payments (the "Subject Annuity Payments") under the Annuity Contract. *See* SCC's Reply to Plaintiff's [sic] Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Supplemental Motion to Dismiss ("Supplemental Motion") ¶ 2. In January 1996, SCC assigned to the defendant LFC Resolution Payment Fund, Ltd., Lee Financial Corporation, General Partner ("LFC"), all of its right, title, and interest in and to the Subject Annuity Payments. See *id.* ¶ 3.

LFC received the Subject Annuity Payments from February 1996 through late 1996. *Id.* ¶ 4. In June of 1997, however, LFC and SCC filed suit against Watkins in the 14th Judicial Court of Dallas County, Texas (the "State Court Case"), alleging that Watkins had breached the Purchase Agreement by arranging to have the Subject Annuity Payments diverted from LFC. See *id.* ¶ 5. The parties to the State Court Case resolved their disputes by entering into an Agreed Final Judgment (the "Agreed Judgment"), which provided that LFC was to receive the Subject Annuity Payments. See *id.*

In September 1997, LFC and SCC presented to First Colony and St. Paul a copy of the Agreed Judgment and asserted that the judgment required First Colony to send the Subject Annuity Payments directly to LFC. See *id.* ¶ 6; Amended Complaint ¶ 18. First Colony and St. Paul refused to comply with LFC and SCC's demands, arguing that the Subject Annuity Payments are non-transferrable. *See* Amended Complaint ¶ 18.

On April 7, 1998, First Colony and St. Paul (collectively, "the plaintiffs") filed the instant action against LFC, SCC, and Watkins (collectively, "the defendants") seeking, *inter alia*, a declaration that the defendants' efforts to transfer future payments under the Annuity Contract violated the terms of the Annuity Contract and Texas law and that neither First Colony nor St. Paul had any obligation to LFC or SCC with respect to the Settlement Agreement, the Annuity Contract, or any of the payments thereunder. *See* Amended Complaint ¶ 24. The plaintiffs also seek injunctive relief prohibiting the defendants from making "any effort, directly or indirectly, to transfer, commute, or encumber the Subject Annuity Payments or any other payments under the Annuity Contract or the Settlement Agreement." See *id.* ¶ 32(a). On June 26, 1998, SCC filed a motion to dismiss the case for lack of subject matter jurisdiction, asserting that the plaintiffs had failed to sufficiently plead that the amount in controversy in this action exceeds the sum of $75,000.00, as required by 28 U.S.C. § 1332. *See* Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Original Motion to Dismiss") ¶¶ 10–12.

Shortly after the plaintiffs filed this suit, the defendants commenced negotiations amongst themselves. On July 23, 1998, Watkins and SCC agreed to rescind and cancel the Purchase Agreement and agreed to a resolution of the Agreed Judgment in the State Court Case. *See* Supplemental Motion ¶ 12. On August 13, 1998, LFC, SCC, and Watkins filed a Partial Release and Satisfaction of Judgment in the State Court Case (the "Partial Release"), releasing Watkins from certain terms of the Agreed Judgment relating to the transfer of the Subject Annuity Payments.[1] *See* Partial Release and Satisfac-

---

1. Specifically, Watkins was released from those portions of the Agreed Judgment (1) requiring him to take all necessary steps to cause the Subject Annuity Payments to be paid to LFC, (2) permanently enjoining and restraining him from taking any action to interfere with any rights of SCC or LFC to

receive the Subject Annuity Payments or to change the mailing address for the payee and beneficiary for the Subject Annuity Payments, and (3) ordering him to forward the Subject Annuity Payments to LFC or SCC. *See* Supplemental Motion ¶ 14. Additionally, LFC and SCC waived and released all claims they may

tion of Judgment, attached as Exhibit 2 to the Supplemental Motion. The defendants also filed, in this court, a Joint Stipulation (the "Joint Stipulation") under which LFC and SCC purport to disclaim "any claim, right, title, and interest which they may have or may have had to the First Colony Annuity or any of the payments thereunder" and to stipulate that future Annuity Payments should be sent to Watkins. *See* Joint Stipulation, attached as Exhibit 3 to Supplemental Motion.

On August 24, 1998, SCC filed a supplemental motion to dismiss this case, arguing that the relief requested by the plaintiffs has been rendered moot as a result of the Joint Stipulation and Partial Release and, therefore, that the case should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The court, having concluded that SCC's supplemental motion to dismiss should be granted, does not in consequence reach the issues raised by SCC's original motion to dismiss.

## II. *ANALYSIS*

Article III of the Constitution limits the judicial power of federal courts to "cases and controversies." See *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). If the issues presented have been resolved, then a suit presents no "case or controversy" and should be dismissed as moot. See *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) ("[F]eder-

al courts are without power to decide questions that cannot affect the rights of litigants in the case before them."); *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("[N]o justiciable controversy is presented ... when the question sought to be adjudicated has been mooted by subsequent developments....").

■ As a general rule, a defendant's voluntary cessation of the conduct challenged by the suit does not make the case moot. See *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). However, such a voluntary cessation will moot a case if (1) "there is no reasonable expectation the alleged violations will recur," and (2) "intervening events have completely and irrevocably eradicated the effects of the alleged violations." See *Hall v. Board of School Commissioners of Conecuh County,* 656 F.2d 999, 1000–01 (5th Cir.1981) (citing *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)).[2] The burden on the defendant to demonstrate mootness is "a heavy one." See *W.T. Grant,* 345 U.S. at 633, 73 S.Ct. 894.

In its Supplemental Motion to Dismiss, SCC argues that all of the plaintiffs' claims for relief have been negated by the events that took place in July and August of 1998, and, therefore, that the plaintiffs' claims should be dismissed as moot. *See* Supplemental Motion at 19. Indeed, it

---

have had to the Subject Annuity Payments, whether such claims arose under the Agreed Judgment or otherwise. See *id.*

**2.** The Fifth Circuit has repeatedly stated that the "crucial test" in an action involving a request for injunctive or declaratory relief where the defendants have voluntarily ceased their allegedly illegal conduct is "whether it can be said with assurance that there is no reasonable expectation that the wrong will be repeated." *Doe v. Duncanville Independent School District,* 994 F.2d 160, 166 (5th Cir. 1993) (quoting *Meltzer v. Board of Public Instruction,* 548 F.2d 559, 566 n. 10 (5th Cir. 1977), *cert. denied,* 439 U.S. 1089, 99 S.Ct.

872, 59 L.Ed.2d 56 (1979)). Other courts have explained that "[t]he focus in this kind of mootness inquiry is ... on the defendant's opportunity and probability of repeating the challenged behavior. To guide [the court's] analysis of whether [a] case has become moot, we must make '[p]redictions ... as to the probability of recurrence, the magnitude of any injury that would result, and the feasibility of preventing any injury by a future suit.'" *Rievman v. Burlington Northern Railroad Company,* 644 F.Supp. 168, 171 (S.D.N.Y. 1986) (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.5 at 325).

appears that, as a result of the voluntary agreements executed by SCC, LFC, and Watkins, including the Partial Release and the Joint Stipulation, the defendants have ceded to the plaintiffs all of the relief requested in the amended complaint. For example, the plaintiffs' complaint seeks a declaratory judgment (1) that "Defendants' purported assignment of the Subject Annuity Payments is invalid and wholly void," (2) that "First Colony has properly refused to comply with Defendants' efforts to transfer the Subject Annuity Payments," and (3) that "First Colony properly discharges its obligations under the Annuity Contract by sending the Subject Annuity Payments to Watkins at the times and in the amounts specified in the Annuity Contract." *See* Amended Complaint ¶ 24. The Joint Stipulation and Partial Release, however, provide (1) that the Purchase Agreement, whereby the Subject Annuity Payments were transferred from Watkins to SCC, has been rescinded and (2) that LFC, SCC, and Watkins all agree that the Subject Annuity Payments should be sent to Watkins, as provided in the Annuity Contract. *See* Joint Stipulation ¶¶ 2, 3; *see also* Partial Release at 2–3. The complaint also seeks a declaratory judgment that "neither First Colony nor St. Paul is under any obligation to LFC, Lee, or SCC with respect to the Settlement Agreement, the Annuity Contract, or any payments thereunder." *See* Amended Complaint ¶ 24. The Joint Stipulation and Partial Release executed by the defendants reflect (1) that neither LFC nor SCC claims any interest in the Subject Annuity Payments whether through the Purchase Agreement or the Agreed Judgment and (2) that LFC and SCC do not contend that either First Colony or St. Paul is under any obligation to either of them with respect to the First Colony Annuity or any payments due thereunder, including the Subject Annuity Payments. *See* Joint Stipulation ¶¶ 1, 4; *see also* Partial Release at 2–3. The defendants have thus conceded all of the relief the plaintiffs sought in their amended complaint.

Despite these concessions by the defendants, the plaintiffs maintain that SCC has not met its "heavy burden" of demonstrating mootness because it has not proven that there is "no reasonable expectation the alleged violations will recur." *See Doe*, 994 F.2d at 166; *see also Hall*, 656 F.2d at 1000. The plaintiffs argue that the Partial Release and Joint Stipulation do not prevent LFC and SCC from attempting to redirect Watkins's First Colony annuity payments in the future. *See* Plaintiffs' Brief in Opposition to Defendant Settlement Capital Corporation's "Supplemental" Motion to Dismiss ("Plaintiffs' Supplemental Brief") at 9. First Colony and St. Paul further insist that the Partial Release and Joint Stipulation are insincere gestures on the part of the defendants because the defendants have refused to execute a consent judgment in this case, providing, among other things, that the defendants are prohibited from entering or attempting to enter any transaction that would constitute a transfer of any annuity payments from Watkins. *Id.* at 10–11. Finally, the plaintiffs urge that the challenged conduct is likely to recur because SCC has not admitted that the challenged conduct is illegal. *Id.* at 11.

The court concludes, however, that "there is no reasonable expectation the alleged violations will recur" and that SCC has met its burden of demonstrating mootness. First, the language of the Joint Stipulation plainly demonstrates that neither LFC nor SCC has any intention of attempting to redirect Watkins's First Colony annuity payments in the future. Second, the defendants' refusal to agree to a consent judgment enjoining them from entering, or attempting to enter, any transaction that would constitute a transfer of any annuity payments from Watkins is not dispositive. The defendants have already stipulated, in the Joint Stipulation and Partial Release, that they will not attempt to transfer any First Colony annuity pay-

ments. Moreover, SCC represents that it is willing to execute an additional stipulation stating explicitly that it has no intention to, and will not, engage in such conduct in the future. *See* Reply of SCC to Plaintiffs' Response to SCC's Supplemental Motion to Dismiss and Brief in Support Thereof ("Defendants' Supplemental Reply Brief") at 9. This court will accept SCC's offer of this additional stipulation but will not require the defendants to enter into a consent judgment that may include terms extending beyond the scope of the instant controversy, when they have already bound themselves to provide the relief originally requested. Finally, in the event that the defendants should engage in the challenged conduct sometime in the future, a court could afford the plaintiffs effective judicial relief at that time. *See* 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure 2d § 3533.5 (1984) at 325 (stating that "the feasibility of preventing any injury by a future suit" is one factor a court should consider in deciding whether a case has become moot). Because the defendants have voluntarily ceased the conduct challenged by the plaintiffs' complaint, and because the court can say with assurance that there is no reasonable expectation that the wrong will be repeated, dismissal of the instant action on the basis of mootness is proper. See *Doe*, 994 F.2d at 166; see also *Rievman*, 644 F.Supp. at 171.[3]

First Colony and St. Paul argue that the defendants' supplemental motion to dismiss should be denied because the Partial Release and Joint Stipulation do not eradicate the collateral consequences of the defendants' prior conduct. Plaintiffs' Supplemental Brief at 12–16. The plaintiffs maintain that they may suffer "exposure to multiple competing claims and adverse tax consequences." *See* Amended Complaint ¶ 28. Specifically, the plaintiffs contend that, despite the fact that all of Watkins's interests in the Subject Annuity Payments have been resolved by the Joint Stipulation and Partial Release, Watkins's dependents, should he have any, or the Texas Workers' Compensation Commission may claim, on Watkins's behalf, that the payments received by the defendants do not satisfy the plaintiffs' payment obligations under the Settlement Agreement or the Annuity Contract. Plaintiffs' Brief in Opposition to Defendant Settlement Capital Corporation's Motion to Dismiss ("Plaintiffs' Brief in Opposition to Original Motion") at 11. To date, however, there has been no indication that any third party intends to assert such a claim. The plaintiffs further contend that the IRS may take the position that the purported sale of the annuity payments fundamentally alters the tax treatment of the settlement for all parties and that they may suffer unknown adverse tax consequences as a result. The plaintiffs advance this argument despite the fact that no such liabilities exist under any current law or regulation. Plaintiffs' Supplemental Brief at 15–16. First Colony and St. Paul also admit that "structured settlement factoring transactions are a relatively new phenomenon, and their tax consequences have not yet been determined. There is no specific guidance on the subject in either the Internal Revenue Code or the regulations and interpretations issued by the IRS." Plaintiffs' Brief in Opposition to Original Motion at 15. Under the circumstances, the court finds that collateral consequences of the defendants' conduct are largely speculative and

---

**3.** The plaintiffs have also stated claims for injunctive relief. Specifically, the plaintiffs have asked that the court enjoin the 'defendants from engaging in any future conduct that is in any way inconsistent with the requested declaratory relief. *See* Amended Complaint ¶¶ 24, 29. To grant an injunction, the court must determine that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W.T. Grant*, 345 U.S. at 633, 73 S.Ct. 894. As discussed above, however, the court cannot reasonably expect that, under the circumstances, the defendants will repeat the challenged conduct. Therefore, the court dismisses the plaintiffs' claims for injunctive relief as moot.

too indefinite to constitute a present case or controversy.

In summary, the court concludes that intervening events have completely and irrevocably eradicated the effects of the challenged conduct and that there is no reasonable expectation the defendants will resume the challenged conduct. Therefore, all of the issues presented by the plaintiffs' amended complaint being moot, such complaint will, upon the filing by SCC of the executed stipulation referred to on page 10 above, be dismissed on grounds of mootness.

### III. *CONCLUSION*

For the reasons discussed above, SCC's supplemental motion to dismiss is **GRANTED** on condition that, within ten days of this date, SCC execute and file the stipulation referred to on page 10 above. Counsel for SCC should also submit, at the same time, a proposed judgment of dismissal that conforms to this memorandum order.

**SO ORDERED.**