[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11613

_____

D.C. Docket No. 8:10-cv-01538-EAK-MAP

ATHEISTS OF FLORIDA, INC.,
ELLENBETH WACHS,

Plaintiffs - Appellants,

versus

CITY OF LAKELAND, FLORIDA,
GOW FIELDS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 26, 2013)

Before DUBINA, Chief Judge, BLACK and ALARCÓN,[*] Circuit Judges.

ALARCÓN, Circuit Judge:

Atheists of Florida and Ellenbeth Wachs, Director of the Lakeland Chapter of the Atheists of Florida, (collectively "AOF"), appeal from the district court's order denying their motion for summary judgment and granting summary judgment in favor of the City of Lakeland, Florida and its mayor, Gow Fields, (collectively "Lakeland" or "Lakeland City") in this action filed by AOF pursuant to 42 U.S.C. § 1983.  AOF alleged in their complaint that Lakeland's practice of opening each Lakeland City Commission legislative session with a sectarian prayer violates the Establishment Clause of the First Amendment and Article I, Section 3 of the Florida Constitution.

Lakeland maintains that Resolution 4848, adopted a few months after AOF complained in March 2010 about its practices in selecting invocation speakers, does not violate the Establishment Clause of the First Amendment or Article I, Section 3 of the Florida Constitution because it requires that invitations to participate be extended to all religious groups.  It also asserts that this Court should not consider the merits of AOF's claim that Lakeland's pre-March 2010 practices

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

were unconstitutional because that issue became moot with the codification of Lakeland's practices in Resolution 4848.

We affirm the district court's order granting summary judgment in favor of Lakeland and Mayor Fields, in part, because we conclude that AOF has failed to demonstrate that the adoption of Resolution 4848 resulted in proselytizing or advancing the Christian religion over all others solely because the speakers who were selected included sectarian references in their prayers. We also conclude that we lack jurisdiction to decide AOF's challenge to the Lakeland City Commission's pre-March 2010 speaker selection practice as violative of the Establishment Clause of the First Amendment or Article I, Section 3 of the Florida Constitution because that issue is moot. Because the district court also lacked jurisdiction, we vacate and remand that portion of the district court's order and direct the district court to dismiss the challenge to the pre-March 2010 prayer practice as moot.

**I**

**A**

The relevant facts are undisputed in this appeal. The parties only disagree as to the inferences that can be drawn from them. The Lakeland City Commission has a longstanding practice of opening each of its bi-monthly legislative sessions with an invocation. Speakers who led the prayers for the twenty-five year period

3

between September 1985 and May 2010, were all of the Christian faith, including

Mayor Fields, who led the prayer on December 21, 2009.  Similarly, the Lakeland

City Commission's meeting minutes reflect that between 1951 and 1979, all the

prayers were led by invocational speakers of the Christian faith.  The minutes

reflect that between August 1979 and September 1985, a Rabbi of the Jewish faith

from Temple Emanuel provided the invocation on fifteen occasions.

Prior to August 2, 2010, the Lakeland City Commission had not adopted an

official policy for the selection of invocational speakers.  The practice between

1980 and March 2010 was for administrative employees to contact religious

leaders whose names were on a list that originated in the Mayor's office, and invite

them to offer the legislative prayer at the Lakeland City Commission meetings.[1]

This list of invocational speakers was developed some time prior to 1980 and was

handed down to each of the succeeding administrative employees tasked with

securing speakers between 1980 and 2010.  No other practice was utilized by these

employees between 1980 and March 2010.  Between 2002 and 2010, a yearly

invocation schedule was generated that listed solely Christian denominations that

---

[1]The lists that were in effect for 2003, 2004, and 2005, for example, identify specific clergymen and women, and their affiliated religious organizations, and categorize them by the following denominations: Assembly of God, Baptist, Catholic, Christian, Chaplains, Church of Christ, Church of God, Episcopal, Lutheran, Methodist, Nazarene, Non-Denominational, Pentecostal, Presbyterian, Seventh Day Adventist, Salvation Army, and Wesleyan.

4

were to be contacted for purposes of performing the invocations at the Lakeland City Commission meetings.

On March 1, 2010, and March 15, 2010, some members of AOF, including Wachs, attended the Lakeland City Commission meetings. At those meetings, they stated their "opposition to the practice of prayer rituals, particularly citing the exclusivity of the Christian Protestant prayer rituals, and the conspicuous absence of non-Protestant invocations," and asked that the invocation be replaced by "a silent moment of reflection as a way to give each and every citizen the personal choice to pray or not (as they prefer)." AOF members also viewed video recordings of other meetings over the Internet. Video recordings of the Lakeland City Commission meetings held in 2009 and 2010 reflect that, when speakers and clergy of the Christian faith led the prayers, they were customarily offered "in the name of Jesus Christ." Other prayers referred to "our Savior" or "the King of Kings" or "the Father, Son and Holy Spirit."

On March 15, 2010, a letter signed by Rob Curry, Executive Director of AOF, was delivered to Mayor Fields asking that the invocation be replaced with a moment of silent reflection to solemnize Lakeland City Commission's meetings.[2]

---

[2]In the letter, Curry stated that he

demand[ed] answers to . . . three questions . . . 1) What is your purpose in having official government prayer as an integral part of Commission meetings? 2) Given the prejudice experienced by atheists and non-christian religious minorities in Lakeland,

In March of 2010, a few days after AOF complained about the existing practice of selecting invocational speakers, Lakeland City Attorney Tim McCausland asked Traci Terry, a Lakeland City employee, "to refresh" the list of invocational speakers by "research[ing] the Yellow Pages and the Internet for established places of worship or religious centers and to include in that search most of the common permutations of churches or synagogues or mosques or temples or worship centers." Terry searched the Yellow Pages and identified several hundred congregations that were not included in Lakeland's existing list of potential speakers. On March 17, 2010, she mailed out letters inviting those congregations to offer an invocation before a Lakeland City Commission meeting. The vast majority of the congregations on the updated list were Christian;[3] however, it also included the Islamic Center of Polk County, Temple Emanuel of Lakeland, Shoresh David Messianic Synagogue, the Swaminarayan Hindu Temple, several Jehovah's Witnesses Halls, and a Unitarian congregation.

---

why would you deliberately put ordinary, everyday citizens from a wide variety of backgrounds into the difficult position of having to take this public test of religious conformity at City Hall? 3) Can you support a silent moment of reflection as a way to give each and every citizen the personal choice to pray or not (as they prefer), without singling anyone out as the current practice does?

[3]The district court in this matter "has . . . taken judicial notice of the fact that the great majority of religious organizations in Lakeland are Christian." *Atheists of Fla., Inc. v. City of Lakeland, Fla.*, 838 F. Supp. 2d 1293, 1313 (M.D. Fla. 2012); *see also Atheists of Fla., Inc. v. City of Lakeland*, 2012 U.S. Dist. LEXIS 11382 (M.D. Fla. Jan. 31, 2012) (noting "that the majority of tax-exempt properties listed as 'churches' in Polk County are identified as Christian religious organizations").

6

In a letter to AOF dated March 18, 2010, Mayor Fields explained that "[t]he practice of opening Lakeland City Commission meetings with an invocation has a long history and will continue unless the City Commission decides it should be changed." Mayor Fields also stated that "[e]very effort is made to ensure that those offering an inspirational message [are] representative of Lakeland's diverse religious community."

On May 6, 2010, based on the responses to her invitations, Terry printed out a new "invocation schedule" for the period April 5, 2010 through the rest of the year.[4] The updated invocation schedule reflects that for the remainder of the year 2010, all the prayers were to be offered by Christian clergy, with the exception of a Jewish Cantor who delivered the invocation on May 3, 2010.

Mayor Fields delivered the invocation on June 7, 2010. He invited the Commission members and the members of the public to stand and bow their heads as he delivered the invocation. On June 21, 2010, Pastor Don Steiner, a member

---

[4]The "2010 Invocational Schedule" included the following speakers:  Chaplain Jack Banton, Retired Military Chaplain; Richard Gerginswald, Legacey Christian Church; Cantor Victor Geigner, Temple Emanuel; Pastor Ed Gardner, Griffin Baptist Church; Pastor Jones, New Birth Deliverance Ministry; Pastor Don Steiner, Wings of Eagles International; Jackie Davis, His Ministry Central Inc.; Beatrice Northington, Founder of Voice of the Nation Corp.; Fr. Matt Mello, Church of the Resurrection; Christine Collins, At His Fee Ministries Incorporated; Pastor Walter Laidler, Christ Community Christian Church; Reverend Willough, Unitarian Congregation (sent letter to cancel); Reverend Jim Hagan, Southside Baptist Church; Pastor Susie Horner, Trinity UMC; Steve Tuberville, Lighthouse Ministries; Reverend Glenn Allison, Florida Holiness Campground; Jody MacAfee, Triumph the Brotherhood Healing Temple; and Pastor Steve Davis, First Baptist Church Lakeland.

of Wings of Eagles, International, delivered a prayer that lasted five minutes.  He stated in his invocation that "it is the responsibility of the citizens of Lakeland and its leadership to seek the face of God Almighty, . . . looking to Jesus to fulfill the destiny of this great central Florida city by moving in our churches, parishes and the individual lives of its citizens."  On July 6, 2010, Jackie Davis, of His Ministry Central, Inc., delivered an invocation that included the following statement: "Father, we pray for wisdom and revelation to be given to these men and women you have selected to govern the affairs of Lakeland.  Not only do you know Lakeland, but you have a plan for Lakeland, even as you have plans for our lives. . . .  In Jesus name, we ask this. Amen."

**B**

AOF filed this action on July 12, 2010.  It alleged that the "policy, practice and custom relative to prayers at City of Lakeland government meetings" violate the Establishment Clause of the First Amendment and Article I, Section 3 of the Florida Constitution "through . . . sponsorship of Protestant Christian prayers at Lakeland City government meetings because such sponsorship of the prayers serves the purpose of promoting Protestant Christian religion over other denominations and religions, and religion over non-religion," and it was performed under the color of state law as defined in 42 U.S.C. § 1983.  AOF also alleged that

8

the imposed invocations violate the Equal Protection Clause by "discriminating against non-believers, discriminating against believers in excluded faiths, and denying non-believers and believers alike Equal Protection of the laws." (Id. at ¶145.)

Three weeks later, on August 2, 2010, the Lakeland City Commission passed Resolution No. 4848 ("Resolution 4848") to "adopt [a] formal, written policy to clarify and codify its invocation practices," which had been implemented, in part, in March 2010 at the direction of City Attorney McCausland. At the August 2, 2010 meeting, City Attorney McCausland recommended that Lakeland City Commission pass Resolution 4848 because "the litigation team [had] convinced [him] that it . . . would be appropriate for . . . the City Commission to establish a written policy, with respect to how [Lakeland] select[s] people to provide the invocations and how procedurally that process is handled." City Attorney McCausland explained that the proposed resolution was "fairly timely in that we have to answer the lawsuit this week, and by answer that means the response to the allegations in the lawsuit as to whether you admit them or deny them and to raise whatever affirmative defenses that you might have."

The prefatory statement to the text of Resolution 4848 provides that "the Commission wishes to maintain a tradition of solemnizing its proceedings by

allowing for an opening invocation before each meeting, for the benefit and blessing of the Commission," and to codify Lakeland's "policy regarding invocations before meetings of the Lakeland City Commission." It also states that "invocation[s] before deliberative public bodies ha[ve] been consistently upheld as constitutional by American courts, including the United States Supreme Court," and cites to legal precedents supporting that proposition as follows: *Marsh v. Chambers*, 463 U.S. 783 (1983) (rejecting a challenge to the Nebraska Legislature's practice of opening each day of its sessions with a prayer); *Lynch v. Donnelly*, 465 U.S. 668, 675 (1984) (holding that "[o]ur history is replete with official references to the value and invocation of Divine guidance in deliberations and pronouncements of the Founding Fathers and contemporary leaders"); *Zorach v. Clauson*, 343 U.S. 306, 314 (1952) (holding that "[w]e are a religious people whose institutions presuppose a Supreme Being"); *Holy Trinity Church v. United States*, 143 U.S. 457, 471 (1892) (acknowledging a "custom of opening sessions of all deliberative bodies and most conventions with prayer"); *Lee v. Weisman*, 505 U.S. 577 (1992); and, *Pelphrey v. Cobb County*, 547 F.3d 1263 (11th Cir. 2008).

The operative language in Resolution 4848 reads as follows:

SECTION 2. In order to solemnize proceedings of the Commission, it is the policy of the Commission to allow for an invocation or prayer to be offered before its meetings for the benefit of the Commission.

10

SECTION 3.  The invocation shall not be listed or recognized as an agenda item for the meeting or as part of the public business.

SECTION 4.  No member or employee of the Commission or any other person in attendance at the meeting shall be required to participate in any invocation that is offered.

SECTION 5.  The invocation shall be voluntarily delivered by an eligible member of the clergy, as specified below.  To ensure that such person (the "invocation speaker") is selected from among a wide pool of local clergy, on a rotating basis, the invocation speaker shall be selected according to the following procedure:

> a.  The Secretary to the City Commission (the "Secretary") shall compile and maintain a database (the "Congregations List") of the religious congregations with an established presence in the local community of Lakeland and Polk County.

> b.  The Congregations List shall be compiled by referencing the listing for "churches," "congregations," or other religious assemblies in the annual Yellow Pages phone book(s) published for the Lakeland and Polk County research from the Internet, and consultation with local chambers of commerce.  All religious congregations with an established presence in the local community of Lakeland and Polk County are eligible to be, and shall be, included in the Congregations List.  Any such congregation not otherwise identified for participation may request its inclusion by specific written communication to the Secretary.

> c.  This policy is intended to be and shall be applied in a way that is all-inclusive of every diverse religious congregation Lakeland and Polk County.  The Congregations List is compiled and used for purposes of logistics, efficiency and equal opportunity for all of the community's religious leaders, who may themselves choose whether to respond to the Commission's invitation and participate.  Should a question arise as to the authenticity of a religious congregation, the

11

Secretary shall refer to criteria used by the Internal Revenue Service in its determination of those religious organizations that would legitimately qualify for Section 501(c)(3) tax-exempt status.

d.   The Congregations List shall also include the name and contact information of any chaplain who may serve one or more of the fire departments or law enforcement agencies of Lakeland and Polk County.

e.   The Congregations List shall also include the name and contact information of any religious congregation located outside the Lakeland and Polk County, if such religious congregation is attended by a resident or residents of Lakeland and Polk County, and such resident requests the inclusion of said religious congregation by specific written communication to the Secretary.

f.   The Congregations List shall be updated, by reasonable efforts of the Secretary, on or about the month of November of each calendar year.

g.   Within thirty (30) days of the effective date of this policy, and on or about December 1 of each calendar year thereafter, the Secretary shall mail an invitation addressed to the "religious leader" of each congregations listed on the Congregations List, as well as to the individual chaplains included on the Congregations List.

h.   The invitation shall be dated at the top of the page, signed by the Secretary at the bottom of the page, and read as follows: [text of letter omitted]

SECTION 6.   As the invitation letter indicates, the respondents to the invitation shall be scheduled on a first-come, first-serve basis to deliver the invocations.

SECTION 7.  No invocation speaker shall receive compensation for his or her service.

SECTION 8.  The Secretary shall make every reasonable effort to ensure that a variety of eligible invocation speakers are scheduled for the Commission meetings.  In any event, no invocation speaker shall be scheduled to offer a[n] invocation at consecutive meetings of the Commission, or at more than three (3) Commission meetings in any calendar year.

SECTION 9.  Neither the Commission nor the Secretary shall engage in any prior inquiry, review of, or involvement in, the content of any invocation to be offered by an invocation speaker.

SECTION 10.  Shortly before the opening gavel that officially begins the meeting and the agenda/business of the public, the Chairman of the Commission shall introduce the invocation speaker and the person selected to recite the Pledge of Allegiance following the invocation, and invite only those who wish to do so to stand for those observances of and for the Commission.

SECTION 11.   This policy is not intended, and shall not be implemented or construed in any way, to affiliate the Commission with, nor express the Commission's preference for or against, any faith or religious denomination.  Rather, this policy is intended to acknowledge and express the Commission's respect for the diversity of religious denominations and faiths represented and practiced among the citizens of Lakeland and Polk County.

SECTION 12.  To clarify the Commission's intentions, as stated herein above, the following disclaimer shall be included in at least 10 point font at the bottom of any printed Commission meeting agenda: "Any invocation that may be offered before the official start of the Commission meeting shall be the voluntary offering of a private citizen, to and for the benefit of the Commission. The views or beliefs expressed by the invocation speaker have not been previously reviewed or approved by the Commission, and the Commission is not allowed by law to endorse the religious beliefs or views of this, or any

13

other speaker."

Following the passage of Resolution 4848, the Lakeland City Commission began publishing the disclaimer described in Section 12 of Resolution 4848 on its meeting agendas. Additionally, while the invocations continue to be given at the commencement of each meeting, they no longer appear as an agenda item.

The record shows that the invitations to speakers on the Congregations List were not mailed within thirty days of passage of the resolution, nor were they mailed in December, as required by Resolution 4848. The Congregations List was not updated in November 2010 as required by Resolution 4848. The Internet and Chamber of Commerce searches to update the Congregations List were not completed until May 11, 2011. Terry testified that "around December, [she] knew that there was going to be an updated list that needed to be done [but that she] didn't have the new phone book, so [she] wanted to wait until [she] had a new phone book, so [she] could start a new updated list, so it would be current and not the same one that [she] had just sent out before."

In 2011, the Lakeland City Commission meetings were opened with invocations by religious leaders primarily of the Christian faith, but at three of the meetings, invocations were delivered by a Muslim speaker, and two Jewish speakers.

14

## II

### A

On August 18, 2010, AOF filed a First Amended Verified Complaint, in which they alleged that the Lakeland City Commission's legislative prayer "policies, practices and customs" violate the Establishment Clause of the First Amendment and Article I, Section 3 of the Florida Constitution because "such sponsorship serves the purpose of promoting one religion or denomination over other denominations and religions, and religion over non-religion." AOF also asserted that the City of Lakeland's "continued sponsorship of the prayers . . . requires the direct and indirect expenditure of city revenues in direct contravention of Article 1, Section 3, of the Florida State Constitution" which prohibits "revenue of the state . . . [being] taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution."

AOF also alleged that the invocations violate the Equal Protection Clause of the Fourteenth Amendment by "discriminating against non-believers," and violate the Freedom of Speech Clause by "coerc[ing], compell[ing], or improperly influenc[ing Plaintiffs] to make a religious expression to the Defendants and to the other attendees as to whether he or she is (a) part of the religious group, or, (b) an outsider to or opponent of the religious ideas being expressed." AOF prayed for

15

declaratory relief pronouncing the Lakeland City Commission invocation practice unconstitutional, injunctive relief preventing Lakeland City Commission from continuing the invocation practice, as well as nominal monetary damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

**B**

Lakeland filed a motion to dismiss AOF's claims in their entirety on September 8, 2010, for lack of subject matter jurisdiction on the ground that the claims were rendered moot by the passage of Resolution 4848, and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mayor Fields also moved to dismiss the claims against him in his official capacity as duplicative of the claims asserted against Lakeland and in his individual capacity on qualified immunity grounds.

The district court granted in part, and denied in part, the motion to dismiss AOF's and Wach's claims filed by the City of Lakeland and Mayor Fields. It dismissed the claims alleging violations of the Equal Protection and Freedom of Speech clauses of the United States Constitution but denied the motion as to the two remaining claims alleging violations of the Establishment clauses of the United States and Florida Constitutions.[5] The district court held that those claims

---

[5]AOF has not appealed from the order dismissing their claims filed pursuant to the Equal Protection and Freedom of Speech clauses.

16

were not moot.  It held that the fact that Lakeland passed Resolution 4848 "three weeks *after* Plaintiffs filed suit in this case, [was] a factor that weighs against mootness." *Atheists of Fla., Inc. v. City of Lakeland*, 779 F. Supp. 2d 1330, 1337 (M.D. Fla. 2011).  The district court noted that "in assessing the likelihood that a government actor will reinstate a challenged practice, the timing of the change in the law can be essential to addressing the government's 'sincerity,' and thus the chances that the change in the law is merely a litigation tactic designed to remove the court's jurisdiction." *Id*. at 1336.

In rejecting Lakeland and Field's contention that the question whether the pre-March 2010 practice was moot, the district court held that  "[g]iven the charitable standard of review applied to factual allegations at this stage of  the proceedings, Defendants' mootness challenge must accordingly fail." *Id.* at 1337.  The district court also noted that "allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs." *Id.* at 1337-38 (citing *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (quoting *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)).

## C

AOF filed a motion for summary judgment on October 14, 2011, in which they alleged that Lakeland violated the Establishment Clause of the First Amendment and Article I, Section 3 of the Florida Constitution by engaging in

17

policies, practices, and customs, "[f]or as many years as records have been kept and can be accessed," under which Christian clergy were invited to present an invocation at each of its public meetings in which they delivered sectarian prayers that contained "specific references to Christ, Jesus Christ, the Lord, the Christian God and other detailed Christian references."  AOF argued that the Lakeland Commission "prayers are used for proselytizing and preaching, and to advance the notion that Lakeland is a Christian city with a Christian destiny."

AOF alleged that Lakeland's codification of its prior policies, practices, and customs by the adoption of Resolution 4848 also violates the Establishment Clause of the United States Constitution and the Florida Constitution.  They urged the district court to enjoin the pre-August 2, 2010 policies and practices, and those set forth in Resolution 4848.  Alternatively, AOF requested that "at least the [pre-August 2, 2010 policies and practices] should be declared unconstitutional."

Lakeland also filed a motion for summary judgment on October 14, 2011.  It argued that the amended procedures for selecting invocation speakers set forth in Resolution 4848 do not violate the Establishment Clause of the First Amendment or Article I, Section 3 of the Florida Constitution because they comply with *Marsh v. Chambers*, 463 U.S. 783 (1983), and this Court's decision in *Pelphrey v. Cobb County*, 547 F.3d 1263 (11th Cir. 2008).  Lakeland also contended that the adoption of the procedures for selecting invocation speakers in Resolution 4848

18

"rendered moot Plaintiffs' challenge to the selection procedures employed before the passage of the resolution: the voluntary cessation doctrine, which presumes that governmental entities are unlikely to resume illegal activities." Defs.' Mot. Summ. J. at 13 (quoting *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1329-30 (11th Cir. 1998)). Lakeland asserted that "the change in the procedure for invocation speaker selection occurred in March 2010, predating both the filing of Plaintiffs' lawsuit and the passage of Resolution 4848."

Mayor Fields filed a motion for summary judgment in which he adopted the arguments asserted in Lakeland's motion for summary judgment. He also argued that even if AOF's claims survived summary judgment, he was entitled to qualified and legislative immunity as to the claims asserted against him in his individual capacity.

The district court granted Lakeland's and Mayor Field's motions for summary judgment, and denied AOF's motion for summary judgment. It noted that Lakeland "pursued two essentially different prayer practices before and after March 2010," *Atheists of Fla., Inc.*, 838 F. Supp. 2d at 1299, and determined to analyze each period separately. It concluded that "[i]n light of the legislative prayer practices approved in *Marsh* and *Pelphrey*, it is plain that the City's [post-March 2010] invocation practice is well within *Marsh* and *Pelphrey*'s command and is, therefore, patently constitutional." *Id*. at 1306.

19

The district court also granted the motion for summary judgment filed by Lakeland with regard to the Lakeland City Commission's pre-March 2010 invocation practices. In so doing, it rejected Lakeland's argument that consideration of the merits of the pre-March 2010 practice of selecting speakers was a moot issue because it was not clear "that the City of Lakeland will not revive its challenged practice." *Id.* at 1309. The district court granted Lakeland's motion for summary judgment on AOF's discrete claim that Lakeland's pre-August 2, 2010 practices were unconstitutional. The district court held "it is undisputed that the City of Lakeland had no official policy with regard to invocations prior to August 2010, when Resolution 4848 was codified. Nor have Plaintiffs adduced any evidence whatsoever of any policymaking official that could arguably be said to have personally 'exploited [the invocation practice] to proselytize or advance any one, or to disparage any other, faith or belief.'" *Id.* at 1310 (quoting *Marsh*, 463 U.S. at 794-95).

The district court also concluded that AOF had failed to demonstrate that Lakeland had violated Florida's Establishment Clause. In so doing it relied on *Council for Secular Humanism, Inc. v. McNeil*, 44 So. 3d 112, 119 (Fla. Dist. Ct. App. 2010), *rev. denied*, 41 So. 3d 215 (Fla. 2010), for the proposition that the first sentence of the Florida Establishment Clause is consistent with the Federal Establishment Clause. *Atheists of Fla., Inc.*, 838 F. Supp. 2d at 1314. The district

20

court also concluded that the expenditure of funds to invite speakers is "simply not the type of practice contemplated by the Florida Constitution's Establishment Clause." *Id.* at 1315.

## III

### A

AOF contends in this appeal that the district court erred in concluding that Lakeland City Commission's invocation practice, prior to and after the filing of this lawsuit, is constitutional because the legislative prayers it authorized proselytized and advanced the Christian religion over all others. Appellants' Br. 31-32. AOF further asserts that Lakeland City Commission's practice of sponsoring sectarian prayers pursuant to Resolution 4848 that invoke "the name of Jesus Christ and other Christian references" violate the Establishment Clause of the First Amendment and Article I, Section 3 of the Florida Constitution because the Supreme Court in *Marsh v. Chambers*, 463 U.S. 783 (1983), precluded "sectarian prayers" in legislative sessions. Appellants' Br. 27. AOF maintains that unlike the legislative prayers involved in *Marsh*, which had "references to Christ" removed, in the legislative prayers at issue here, "[r]eferences to Christ were and are not only commonplace, but they are typical and emphatic." (Appellants' Br. 28, 33.)

In response, Lakeland asserts that in March of 2010, City Attorney McCausland instructed Terry to update the list of speakers by researching the Polk

21

County Yellow Pages and the Internet to include every religious organization, including "churches or synagogues or mosques or temples of worship" located in Polk County. A list of over 600 religious organizations was completed by Terry in March 2010. It includes a Jewish synagogue, an Islamic Center, Jehovah's Witnesses meeting halls, Unitarian churches, and a Hindu temple.

Lakeland argues that its practice in selecting invocation speakers after March 2010, as officially codified in Resolution 4848, does not violate the Establishment Clause of the First Amendment or Article I, Section 3 of the Florida Constitution. It also contends that the passage of Resolution 4848 has rendered AOF's claim regarding its practices prior to March 2010 moot under the doctrine of voluntary cessation. To determine whether the pre-March 2010 claim is moot we must first consider whether the practice set forth in Resolution 4848 violates the United States Constitution and the Florida Constitution.

**B**

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(a). Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We review "de novo the district court's grant of summary judgment, applying the same

22

legal standards as the district court, and viewing all facts and reasonable inferences drawn therefrom in the light most favorable to . . . the non-moving party." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

AOF asserts that the district court erred in granting Lakeland's motion for summary judgment regarding Lakeland's practices for the selection of invocation speakers after August 2, 2010, because it failed to apply the test set forth by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), to determine whether Resolution 4848 is consistent with the Establishment Clause. Appellants' Br. 25. In 1971, the Supreme Court established a three-part test in *Lemon*, to determine whether laws and government practices are consistent with the Establishment Clause. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Lemon*, 403 U.S. at 612-13 (internal citations omitted).

Twelve years later, in *Marsh v. Chambers*, 463 U.S. 783 (1982), the Supreme Court considered a challenge by a Nebraska state legislator to the practice of opening of each session of the legislature with a prayer. The Eighth Circuit applied the *Lemon* test and held that the prayers violated all three elements of the *Lemon* test, and determined that the prayers violated the Establishment Clause. It

23

enjoined the State from engaging in any aspect of its established chaplaincy practice. *Id.* at 786.

The Supreme Court granted certiorari and reversed. It held that "the Nebraska State Legislature's practice of opening each legislative day with a prayer by a chaplain paid by the State," is a practice which does not "violate[] the Establishment Clause of the First Amendment." *Marsh*, 463 U.S. at 784. The Supreme Court did not apply the *Lemon* test. Instead, the Court considered the nation's longstanding history and tradition of legislative prayer, including the fact that Congress has consistently appointed Congressional chaplains to open each session with a legislative prayer, dating back to the First Congress. *Id.* at 786-92. The Court explained that

> [i]n light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with prayer has become part of the fabric of our society. To invoke Divine guidance on a public body entrusted with making the laws, is not, *in these circumstances*, an "establishment" of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country.

*Id.* at 792 (emphasis added).

In upholding Nebraska's legislative prayer practices, the Supreme Court rejected the petitioner's argument that selecting a Presbyterian clergyman to offer legislative prayers in the Judeo-Christian tradition violated the Establishment Clause because "[t]he content of the prayer is not of concern to judges where . . .

24

there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." *Id.* at 794-95.

While the Supreme Court has not extended the *Marsh* exception to legislative bodies other than state legislatures, the Court indicated that its determination was applicable to "sessions of legislative and other deliberative bodies." *Id*. at 786.

The only challenge to the constitutionality of legislative prayer permitted by a local deliberative body that has been considered by this Circuit is set forth in *Pelphrey*. In that matter, taxpayers challenged the practices of the Cobb County Board and its Planning Commission of allowing religious leaders of differing faiths to offer invocations on a rotating basis at their meetings. *Pelphrey*, 547 F.3d at 1266. The speakers represented various faiths, including Christianity, Islam, Unitarian Universalism, and Judaism. *Id.* at 1266. The "expressions of . . . religious faiths . . . ordinarily [were] brief and often . . . occurred in the concluding phrase of the prayers." *Id.* "The prayers . . . included references to 'Jesus,' 'Allah,' 'God of Abraham, Isaac, and Jacob,' 'Mohammed,' and 'Heavenly Father.'" *Id.* As required by *Marsh*, this Court first considered whether there was any "indication that the prayer opportunity ha[d] been exploited to proselytize or advance any one or to disparage any other faith or belief" at the Cobb County Board and the Planning Commissions' meetings. *Id.* at 1273, 1277. To make that

25

determination, this Court applied a three-factor test analyzing "[(1)] the identity of the invocational speakers, [(2)] the selection procedures employed, and [(3)] the nature of the prayers." *Id.* at 1277.

As to the first factor, this Court upheld the district court's determination "that the [Cobb County Board] did not exploit the prayers to advance one faith by using predominantly Christian speakers. Although the majority of speakers were Christian, the parties agree that prayers were also offered by members of the Jewish, Unitarian, and Muslim faiths." *Id.* at 1277. This Court also held that the district court's "finding that the diverse references in the prayers, viewed cumulatively, did not advance a single faith" was not clearly erroneous. *Id.* As to the second factor, this Court agreed with the district court that the Cobb County Board's selection process was "not motivated by an improper motive" because its "list of potential speakers [included clergy] from various sources and included diverse religious institutions, including a mosque and three synagogues." *Id.* at 1278. "Because there [was] no clear error in the findings that the prayers of the County Commission were not exploited to advance one faith or belief, we need not evaluate the content of the prayers. The federal judiciary has no business in 'compos[ing] official prayers for any group of American people to recite as a part of religious program carried on by government . . . .'" *Id.* (quoting *Lee v. Weisman*, 505 U.S. 577, 588 (1992)).

26

As to the Cobb County Planning Commission's prayer practices, this Court affirmed the district court's decision that the prayers offered "during 2003-2004 were unconstitutional because the selection procedures violated the 'impermissible motive' standard of *Marsh*," since the evidence showed that the Planning Commission expressly "exclud[ed] certain faiths because of their beliefs." *Id*. at 1281-82. The evidence in *Pelphrey* showed that during the selection process in 2003 and 2004, a line had been "drawn through several subcategories of churches: 'Churches-Islamic,' 'Churches-Jehovah's Witnesses,' 'Churches-Jewish,' and 'Churches-Latter Day Saints[,]' [and that] [n]o clergy from those subcategories were asked to provide the invocation during 2003-2004." *Id.* at 1267-68. This Court explained that "[t]he 'impermissible motive' standard does not require that all faiths be allowed the opportunity to pray[, but] instead prohibits purposeful discrimination." *Id.* at 1281-82 (holding that "categorical exclusion of certain faiths based on their beliefs is unconstitutional"). Declaring the 2003 and 2004 prayers unconstitutional, this Court rejected the Planning Commission's argument that "the selection process is immaterial when the content of the prayer is constitutional," because "[t]he central concern of *Marsh* is whether the prayers have been exploited to created an affiliation between the government and a particular belief or faith. *Id.* at 1281 (citing *Marsh*, 453 U.S. at 794-95).

### C

27

In this matter, the district court applied the three *Pelphrey* factors to Lakeland's post-March 2010 revised practices for the selection of speakers, and the post-August 2010 official, written policy. It held that the identity of the invocation speakers was primarily but not exclusively Christian, reflecting the religious makeup of Lakeland and the surrounding county. It also concluded that the fact that clergy of other faiths delivered invocations in 2010 and 2011– a Jewish Cantor in 2010 and the Imam of the sole mosque in the county in 2011– provided "diverse references in the prayers [which], viewed cumulatively, did not advance a single faith." *Pelphrey*, 547 F.3d at 1277.

With regard to the second *Pelphrey* factor, the record shows that the speaker selection practice that was initiated informally in March 2010 and adopted officially in Resolution 4848, largely parallels the speaker selection process found constitutional in *Pelphrey*. Pursuant to Resolution 4848, Lakeland is required to update the Congregations List annually using the Yellow Pages and the Internet to search for congregations that should be included. Further, potential speakers from congregations outside the county are also included if a resident of Lakeland is a member of that congregation and requests that it be included. The new Congregations List includes several hundred religious organizations that the Lakeland City Commission calls upon to deliver invocations. Every religious congregation on the updated list received an invitation to give the invocation at

28

Lakeland City Commission meetings in March 2010 and again in May 2011. Thus, Lakeland's current process for finding potential invocation speakers pursuant to Resolution 4848 is even more expansive and inclusive than that found constitutional in *Pelphrey,* because Lakeland gathers information regarding religious organizations, including the chamber of commerce, to supplement its Yellow Pages and Internet searches, and permits religious congregations not placed on its Congregations List to apply to be included. *See Pelphrey*, 547 F.3d at 1267 ("[T]he administrative specialist of the County Commission, compiles a list of religious organizations in Cobb County from several sources, including the Yellow Pages, the internet, and business cards.").

AOF also maintains that the content of the Lakeland City Commission's "sectarian legislative prayers fall[s] outside of the narrow confines of *Marsh v. Chambers*, 463 U.S. 783, 103 S. Ct. 3330 (1983)." Appellant's Br 3. We disagree. The Supreme Court did not hold in *Marsh* that a court must review the text of an invocation prayer to determine whether it contains sectarian references. Instead, the Court instructed as follows:

> The content of the prayer is not of concern to judges where, as here, there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief. That being so, it is not for us to embark on a sensitive evaluation or to parse the content of a particular prayer.

*Id.* at 794-95.

29

In *Pelphrey*, this Court stated that "we read *Marsh* . . . to forbid judicial scrutiny of the content of prayers absent evidence that the legislative prayers have been exploited to advance or disparage a religion." 547 F.3d at 1274. No such evidence has been presented by AOF.

The selection procedures of the invocational speakers invited to deliver an invocation at Lakeland City Commission's meetings pursuant to policies and practices initiated informally in March 2010, which were codified with the passage of Resolution 4848 in August 2010, do not support the AOF's contention that Lakeland attempted to exploit the prayer opportunity to proselytize or advance or disparage any one faith or belief. Nor do those policies and practices have the effect of affiliating the Lakeland City Commission with any discrete faith or belief. Accordingly, we are persuaded that the district court did not err in granting Lakeland's motion for summary judgment with regard to Lakeland's policies and practices for the selection of speakers since March 2010 and codified in Resolution 4848.

## D

AOF also contends that Lakeland's pre-August 2, 2010 practices violated the Establishment Clause of the First Amendment and Article I, Section 3 of the Florida Constitution because they advanced a particular religion since "[e]very prayer-giver from 2002 to May 2010 [was] Christian, and the change offered after litigation

30

ensued [has] been cosmetic." Appellants' Br. 32. Lakeland argues that "[t]he City's codification of the revised procedures employed in carrying out its legislative invocation practice renders moot [AOF's] challenge to the practice prior to Resolution 4848." Appellees' Br. 39. Lakeland maintains that "[w]hile the District Court determined the claims regarding the pre-Resolution practice were not moot, mootness provides another avenue by which this Court may affirm the District Court's decision regarding the pre-Resolution policy." Id. at fn. 17.

AOF contends that "[f]ar from rendering the case moot, Resolution . . . 4848 makes Defendants' prayer practices more egregious, " because it "expressly excluded non-religious or secular speakers, and required the invocations to be religious, . . . categorically excluded speakers who are not members of a 'clergy' which operates to exclude not only the non-religious but also any religions that do not have 'clergy,' . . . [and] also limited only to 'religious congregations,' which excludes non-religious groups such as atheists, agnostics, secularists and humanists from participation, and also excludes any religions without 'congregations.'" Appellants' Br. 37-38. Whether a case is moot is a question of law that we review de novo. *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1282 (11th Cir. 2004).

As noted *supra*, the district court rejected Lakeland's contention that, if the informal practice instituted in March 2010 for the selection of invocation speakers

31

was constitutional, the question whether the practice it had followed previously was moot. In the answering brief Lakeland filed in this Court, it argues that "the City's codification of the revised procedures employed in carrying out its legislative invocation practice renders moot Appellant's challenge to the practice prior to Resolution 4848." Appellees' Br. 39. "A prevailing party is entitled to advance in support of its judgment all arguments it presented to the district court. It need not and should not file a cross-appeal just because the district judge rejected one of its arguments on the way to deciding in its favor." *Rose Acre Farms, Inc. v. Madigan*, 956 F.2d 670, 672 (7th Cir. 1992).

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (some internal quotation marks omitted)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* at 727 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

32

It is well-settled "that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id.* (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* "Given this concern, [the Supreme Court has] explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)); *see also United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (holding that "the heavy burden of persuasion" that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness)). "A defendant's assertion that it has no intention of reinstating the challenged practice 'does not suffice to make a case moot' and is but 'one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts.'" *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)).

This Court has held that voluntary cessation by a government actor gives rise to a rebuttable presumption that the objectionable behavior will not recur. *See, e.g.,*

33

*Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009); *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1283 (11th Cir. 2004); *Coral Springs St. Sys. v. City of Sunrise*, 371 F.3d 1320, 1328-34 (11th Cir. 2004).  An assertion of mootness in such a case should be rejected "only when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated." *Beta Upsilon Chi Upsilon*, 586 F.3d at 917 (quoting *Troiano*, 382 F.3d at 1284 (internal quotation marks omitted)).

In determining whether an offending policy is likely to be reinstated, the Court is "more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or was at least engaged in reluctantly." *Sheely*, 505 F.3d at 1184.  "Conversely, we are more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a 'continuing practice' or was otherwise deliberate." *Id*. at 1184-85 (citing *Grant*, 345 U.S. at 632 n.5 ("When defendants are shown to have settled into a continuing practice . . . , courts will not assume that it has been abandoned without clear proof." (internal quotation marks omitted))); *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) ("five-year history of violations" cut against finding of mootness); *Hall v. Bd. of Sch. Comm'rs*, 656 F.2d 999, 1000 (5th Cir. 1981) ("longstanding practice" cut against finding of mootness).

34

Arguing that the post March 2010 practice of selecting speakers, as codified in Resolution 4848, violated the Establishment Clause of the First Amendment, AOF contends that the adoption of Resolution 4848 was a litigation strategy that is "at best a cosmetic tactic to attempt to mask their continuing and patently unconstitutional practices." Appellants' Br. 21. As discussed above, the record shows that the practice followed before March 2010 of not selecting speakers who were not Christians ended prior to the date AOF filed this action.

In *Hall*, the Fifth Circuit reversed the district court's determination that a case was moot because the record showed that the longstanding practice of requiring the reading of morning devotionals in public schools was not moot because it was "permitted . . . to continue until the filing of th[e] lawsuit was imminent in 1979, despite the fact that such religious readings in public school were declared unconstitutional as early as 1963."[6] *Hall*, 656 F.2d at 1000.

In this matter, unlike the circumstances in *Hall*, the pre-March 2010 speaker selection practice had been discontinued at the request of City Attorney McCausland prior to the filing of this action. After AOF began voicing complaints about the invocation practice, City Attorney McCausland made a conscientious effort to conform Lakeland's prayer practices to the requirements of the

---

[6]Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

35

Establishment Clause.  Although AOF continues to vehemently dispute the lawfulness of the pre-March 2010 practice, the case is moot because it "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC*, 133 S. Ct. at 727 (quotation omitted).  AOF has failed to rebut the presumption that the Lakeland City Commission will not reinstate its pre-March 2010 practices if we hold that Resolution 4848 is constitutional.  The Lakeland City Commission discontinued its prior speaker selection procedures a few days after it was requested to do so, and months prior to the filing of this action.  We conclude, therefore, that we lack jurisdiction to decide AOF's claim that the Lakeland City Commission's pre-March 2010 speaker selection practice violated the Establishment Clause of the First Amendment or Article I, Section 3 of the Florida Constitution.  *See Todd v. State*, 643 So. 2d 625, 628 n.3 (Fla. Dist. Ct. App. 1994) ("Because the language regarding establishment in the Florida constitution parallels the language of the First Amendment, federal law will be of great value in determining issues under Florida's constitution.") (citing 25A Fla. Stat. Ann. 79 (1991) (Commentary)).  For the same reasons, the district court lacked jurisdiction, and we vacate that portion of the district court's judgment addressing the merits of AOF's challenge to the pre-March 2010 prayer practice and remand for the district court to dismiss that portion of the challenge as moot.

36

## IV

AOF also maintains that the Lakeland City Commission's prayer practices pursuant to Resolution 4848  violate the "no-aid" provision of the Florida Constitution's Establishment Clause.   Article I, Section 3 of the Florida Constitution mirrors the Establishment Clause of the United States Constitution but includes an additional "no-aid provision."   It provides:

> There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety.  No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.

Fla. Const. art. I, § 3.  The evidence shows that the approximate cost to the Lakeland City Commission of updating the Congregations List and mailing out invitations is $1,200 to $1,500 annually.  Invocation speakers are not paid by the City of Lakeland, nor are their congregations.  The district court held that AOF had "fail[ed] to demonstrate how the mailing of invitations to various religious leaders in the Lakeland community *confers any benefit whatsoever* on any religion." *Atheists of Fla., Inc.*, 838 F. Supp. 2d at 1315 (citing *McNeil*, 44 So. 3d at 119) (emphasis in original).

In *McNeil*, Florida's First District Court of Appeals instructed that the no-aid

37

provision is violated when public funds are used "to advance religion," which occurs when a government-sponsored program is "used to promote the religion of the provider, is significantly sectarian in nature, involves religious indoctrination, requires participation in religious ritual, or encourages the preference of one religion over another." *McNeil*, 44 So. 3d at 120. "In determining whether such programs violate the no-aid provision, the inquiry necessarily will be case-by-case . . . ." *Id.*

Based on the record before us, AOF has not demonstrated that Lakeland's expenditure of $1,200 to $1,500 per year to arrange for invocational speakers to attend meetings and solemnize the proceedings has resulted in "any pecuniary benefit, either direct or indirect, conferred by [the City of Lakeland] upon such groups, nor does it show that any religious organization received financial assistance from [Lakeland] for the promotion and advancement of its theological views." *Pelphrey*, 410 F. Supp. 2d at 1348. Accordingly, we see no error in the district court's ruling in favor of Lakeland as to this claim.

## Conclusion

The district court did not err in its determination that the prayer practices of Lakeland City Commission after March 2010 do not violate the Establishment Clause of the First Amendment or Article I, Section 3 of the Florida Constitution. Accordingly, we AFFIRM the judgment of the district court with regard to the

Lakeland City Commission's prayer practices after March 2010.

Because we affirm the district court's determination that the City of Lakeland did not violate AOF's constitutional rights in adopting Resolution 4848, we also AFFIRM the district court's order granting summary judgment in favor of Mayor Fields, who adopted by reference the arguments asserted in the City's Motion for Summary Judgment.

We VACATE and REMAND that portion of the district court's order granting summary judgment in favor of Lakeland and Mayor Fields as to the City's pre-March 2010 legislative prayer practices because the district court was without jurisdiction to hear those claims since Lakeland's pre-March 2010 practices are moot.

**AFFIRMED in part, VACATED and REMANDED in part.**

39