[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14065

_____

D.C. Docket No. 1:12-cv-02230-SCJ

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

STATE OF GEORGIA,
SECRETARY, STATE OF GEORGIA,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

Before JORDAN and BENAVIDES,[*] Circuit Judges, and BARTLE,[**] District
Judge.

_____

[*] Honorable Fortunato P. Benavides, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

[**] Honorable Harvey Bartle III, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

JORDAN, Circuit Judge:

In 2009, in order to ensure that "absent uniformed service voters and overseas voters [have] enough time to vote in an election for Federal office[,]" 42 U.S.C. § 1973 ff-1(g)(1)(A), Congress passed the Military and Overseas Voter Empowerment Act, Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2322 (2009), which amended the Uniformed and Overseas Citizen Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ff. If a covered voter—i.e., an absent uniformed service voter or an overseas voter—requests an absentee ballot "at least 45 days before an election for Federal office," UOCAVA now requires a state, absent a hardship waiver, to transmit the ballot to the voter "not later than 45 days before the election[.]" 42 U.S.C. § 1973ff-1(a)(8)(A).

In separate suits brought by the United States against Georgia and Alabama, district courts ruled that this 45-day transmittal requirement applies to runoff elections for federal office, and that the runoff election schemes in those two states—as they existed at the time—violated UOCAVA. The district courts therefore granted preliminary injunctive relief, summary judgment, and permanent injunctive relief in favor of the United States. *See United States v. Georgia*, 952 F. Supp. 2d 1318 (N.D. Ga. 2013); *United States v. Alabama*, 998 F. Supp. 2d 1283 (M.D. Ala. 2014). Both Georgia and Alabama appealed. For the reasons which

2

follow, we dismiss Georgia's appeal as moot.[1]

In mid-January of 2014, after the district court had issued its ruling and after the briefs in this appeal were filed, the Georgia Legislature passed H.B. 310, which in relevant part amends Georgia's election calendar and voting procedures. Georgia Governor Nathan Deal signed H.B. 310 into law on January 21, 2014.

H.B. 310 amends § 21-2-501(a) of the Georgia Code by adding new subsections (a)(3) and (a)(5) so that Georgia now complies with the 45-day transmittal requirement set forth in subsection (a)(8)(A) of UOCAVA. Subsection (a)(3) of § 21-2-501 provides that "[i]n the case of a runoff from a general election for a federal office or a runoff from a special primary or special election for a federal office held in conjunction with a general election, the runoff shall be held on the Tuesday of the ninth week following such general election." Subsection (a)(5) of § 21-2-501 provides that "[i]n the case of a runoff from a special primary or special election for a federal office not held in conjunction with a general primary or general election, the runoff shall be held on the Tuesday of the ninth week following such special primary or special election." So, as things stand now under codified Georgia law, the state's election calendar and procedures satisfy

---

[1] A panel of this Court recently rejected Alabama's appeal on the merits. *See United States v. Alabama*, No. 14-11298, ___ F.3d ___, 2015 WL 570978 (11th Cir. Feb. 12, 2015) (holding that UOCAVA's 45-day transmittal requirement applies to runoff elections for federal office).

3

UOCAVA's 45-day transmittal requirement for ballots to covered voters in runoff elections for federal office.

Significantly, H.B. 310's changes are not limited to bringing Georgia law in line with UOCAVA's 45-day transmittal requirement. Other aspects of H.B. 310 change or amend the dates of general and special primary elections, the filing of notices of candidacy, the nomination of presidential electors, the conventions of political parties, the procedures for absentee voting and advance voting, and the filing of campaign contribution reports. *See* H.B. 310, §§ 1, 2, 3, 4, 5, & 9.

"If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief then the case is moot and must be dismissed." *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1282 (11th Cir. 2004). The Supreme Court has ruled in a number of cases that the enactment of new legislation which repeals or materially amends the law being challenged—even if the change comes after the district court's judgment—renders the lawsuit and/or appeal moot and deprives the court of jurisdiction. *See e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 474 (1990); *Kremens v. Bartley*, 431 U.S. 119, 128 (1977); *Diffenderfer v. Cent. Baptist Church*, 404 U.S. 412, 415 (1972). There is one Supreme Court case, *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982), that reaches a different result, but we have characterized that decision as resting on the "substantial

4

likelihood that the offending policy w[ould] be reinstated if the suit [wa]s terminated." *Troiano*, 382 F.3d at 1284. *See also Beta Upsilon Chi Upsilon Chapter at Univ. of Fla. v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009) (describing *City of Mesquite* as a "case where the Court decided that a challenge to a city statute was not moot, because even though the city had repealed the statute, there was 'no certainty' that the city would not reenact the law and the city had announced its intention to reenact the offending statute if the Court dismissed the case"). *Cf. Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (refusing to dismiss appeal challenging city's set-aside ordinance because newly enacted ordinance continued to accord preferential treatment to certain groups).

The governing principle, as we have distilled it, is that "in the absence of evidence indicating that the government intends to return to its prior legislative scheme, repeal of an allegedly offensive statute moots legal challenges to the validity of that statute." *Nat'l Adv. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005). Given that H.B. 310 encompasses comprehensive electoral reforms, and is not merely a legislative fix for the violation of the 45-day UOCAVA transmittal requirement, we cannot conclude that the Georgia Legislature would go back to the old electoral system if this appeal were dismissed as moot. This is particularly so because, as a general matter, "voluntary cessation

by a government actor gives rise to a rebuttable presumption that the objectionable behavior will not recur." *Atheists of Fla. Inc. v. City of Lakeland*, 713 F.3d 577, 594 (11th Cir. 2013).[2]

The appeal is dismissed as moot, and the judgment of the district court is vacated. We remand with instructions that the district court dismiss the complaint filed by the United States for lack of subject-matter jurisdiction. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1309-10 (11th Cir. 2000) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950)).

**APPEAL DISMISSED AS MOOT.**

---

[2] At oral argument, Georgia asserted that the enactment of H.B. 310 did not cause its appeal to be moot. In its subsequent supplemental letter brief, Georgia now says that everything is moot and represented that it will not return to the former electoral scheme. Although we are somewhat concerned by this change of position, our recent decision in *Alabama*, No, 14-11298— which rejects the interpretation of UOCAVA advanced by Alabama and Georgia—does not allow Georgia to revert to its old ways. We therefore take Georgia's most recently articulated position as the governing one.