[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15504
Non-Argument Calendar

_____

D.C. Docket No. 4:12-cv-00052-RS-CAS

SHERENA TURNER,

Plaintiff - Appellant,

versus

FLORIDA PREPAID COLLEGE BOARD,
A Public Body Corporate,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 2, 2013)

Before TJOFLAT, PRYOR and KRAVITCH, Circuit Judges:

PER CURIAM:

Sherena Turner appeals the summary judgment rendered in favor of her

former employer, the Florida Prepaid College Board (FPCB), on her claims of race

discrimination and retaliatory discharge under Title VII of the Civil Rights Act of

1964 and interference with and retaliation for the exercise of her rights under the Family and Medical Leave Act (FMLA).[1]  After thorough review of the record, we conclude that summary judgment was proper as to Turner's Title VII claims but that genuine issues of fact remain as to her FMLA claims.  Therefore, we affirm in part, vacate in part, and remand for further proceedings.

I.

We recount the facts in the light most favorable to Turner.  *See Kingsland v. City of Miami*, 382 F.3d 1220, 1227 (11th Cir. 2004).  From March 2008 to January 2011, Turner worked as a Financial Analyst for the FPCB.  During most of this period, she was the only black employee supervised by William Thompson, a white male.  Thompson and Turner often did not get along, and Turner felt Thompson treated her worse than the rest of the employees he supervised.

On November 3, 2010, Turner sent an email to an employee of a vendor FPCB did business with that Turner does not dispute "took a defensive tone," attacked the employee, and was unprofessional.  After learning of this email, Thompson counseled Turner about her behavior.  Early the next morning, Turner emailed Thompson blaming him for her unprofessional email to the vendor and

---

[1] Although Turner also mentioned "Chapter 760, Florida Statutes" and "42 U.S.C. § 1981a" in the introduction to her amended complaint, the district court deemed those passing references insufficient to state independent claims.  Because Turner does not challenge that conclusion on appeal, she has abandoned any claim under those provisions. *Carmichael v. Kellogg, Brown, & Root Servs., Inc.*, 572 F.3d 1271, 1293 (11th Cir. 2009).

directing him to stop yelling at her and "be considerate at all times when approaching" her.

Later that day, November 4, 2010, Thompson conducted a performance evaluation for Turner, which he was required to do annually for each employee he supervised. He noted, among other things, that the quality of Turner's work had declined significantly over the preceding year, that she was unwilling to ask for help, and that she took personally any feedback about problems with her work. In the evaluation, Thompson placed Turner on a "60-day performance improvement plan" and wrote that, "[i]f her job performance and attitude [did] not significantly improve[] within that time and consistently remain at [that] significantly improved level," he would "recommend that [her] employment with the [FPCB] be terminated." That same day, he met with Turner and a representative from the FPCB's Human Resources department, Dorothy Melton, to discuss the evaluation. Both in writing and in person, he warned Turner that the FPCB "reserve[d] the right to terminate [her] employment prior to [her] formal re-evaluation in 60 days."

On December 15, 2010, prior to the planned January 3 reevaluation date, Thompson began drafting a report on Turner's progress that concluded she had made no improvement. The next morning, Turner requested FMLA leave from Melton, as directed by her physician. Later that day, Thompson delivered his

3

performance review to Melton. [2]  Melton informed Thompson that Turner had requested and would receive FMLA leave from December 20 through January 7. Thompson told Melton that he had decided to recommend that Turner be fired.

While she was out on leave, Turner began for the first time to think the reason Thompson treated her differently was her race.  So on January 8, 2011, the Saturday before she was to return to work, she sent an email to Melton and the FPCB's Executive Director, Thomas Wallace. [3]  In that email, she said that Thompson had ben verbally abusive and treated her differently "because of [her] race . . . and for exercising [her] rights for FMLA time . . . ."  The same day, she sought and was granted additional FMLA leave.

Turner returned to work on January 18 and, upon her return, spoke with an investigator from the State Board of Administration about her allegation that Thompson had discriminated against her.  Later that morning, however, she was

---

[2] In her briefs, Turner claims she disputes Thompson's testimony that he orally recommended on December 16 that she be terminated, suggesting that his recommendation came later, after her complaint of racial discrimination.  Neither before the district nor on appeal, however, has she pointed to any *evidence* upon which she bases this asserted dispute.  A fact is not disputed for summary judgment purposes simply if the nonmovant claims the evidence put forward in support of it is "dubious," as Turner does.  "Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 -15 (11th Cir. 2011).

[3] As the district court noted, Turner's two January 8 emails were sent to Melton and an address for a Thomas Williams, but both begin "Hello Mr. Wallace and Ms. Melton."  Thus, the email addresses appear to be typos, yet neither party has cleared up this confusion on appeal. Nevertheless, because Turner asserts on appeal that she sent the emails to Wallace and Melton and Thompson does not dispute that assertion, we assume it to be true.

called into Melton's office, where Thompson presented her with a negative performance evaluation. And, with Wallace's approval, she was terminated.

Turner filed suit against the FPCB alleging that Thompson discriminated against her based upon her race, retaliated against her when she complained, interfered with the exercise of her FMLA rights, and retaliated against her for exercising her FMLA rights. The district court rendered summary judgment in the FPCB's favor on all four claims. This is Turner's appeal.

## II.

"We review de novo the district court's grant of summary judgment, applying the same legal standards as the district court, and viewing all facts and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Atheists of Fla., Inc. v. City of Lakeland, Fla.*, 713 F.3d 577, 589 (11th Cir. 2013) (internal quotation marks and alteration omitted). Summary judgment is appropriate on a claim when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* "Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Id.* (internal quotation marks omitted).

## III.

## A.

5

Title VII makes it unlawful for an employer to discriminate against an employee based upon her race. 42 U.S.C. § 2000e-2(a)(1). Discrimination can be proven either directly or, as Turner seeks to do, indirectly using circumstantial evidence. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). To prove differential treatment using circumstantial evidence, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Hall v. Ala. Ass'n of Sch. Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003). To do so, she must show (1) that she was a member of a protected class (2) who was qualified for her position but (3) was subject to an adverse employment action and (4) treated less favorably than a similarly situated employee outside of her protected class. *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Even if a plaintiff cannot point to a similarly situated comparator employee who was treated more favorably, however, she may in some cases create a "triable issue concerning the employer's discriminatory intent" by showing a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockeed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks omitted).

Turner has not identified a proper comparator. She points us to a Management Assistant she argues was treated more favorably, but that individual's misconduct was a mere typographical error. Turner, by contrast, concedes she sent

an accusatory and unprofessional email to an employee at one of FPCB's vendors. Because "[t]he quantity and quality of the comparator's misconduct" is not "nearly identical," Turner has not presented evidence of a similarly situated employee who was treated more favorably. *Stone & Webster Constr., Inc. v. U.S. Dept. of Labor*, 684 F.3d 1127, 1135 (11th Cir. 2012).

Nor has Turner presented evidence that would permit her to circumvent the usual *prima facie* showing. Just as the district court did, we accept for summary judgment purposes Turner's testimony that Thompson singled her out and treated her poorly. But "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the working place." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) (internal quotation marks and alteration omitted). Unless something links the actions to the employee's race, that a decisionmaker singles an employee out does not permit a jury to infer intentional discrimination based on race.

Here, the only link between Turner's race and Thompson's actions is her statement in an affidavit that Thompson did not treat white employees as harshly. But we have never suggested that a plaintiff's generalized averment that her employer treated her differently than employees of a different race can, alone, create a "convincing mosaic of circumstantial evidence" from which a jury could find intentional discrimination based on race. *Smith*, 644 F.3d at 1328 (internal

7

quotation marks omitted).  To so hold would do away with the usual requirement that a plaintiff identify a comparator.  In *Smith*, the plaintiff presented evidence that the paperwork in an investigation into racist emails explicitly identified employees by race.  *Id.* at  1336-37, 1341, 1345-46.  And in that case, the plaintiff was fired along with all other employees that paperwork identified as white, while no black employees under investigation were terminated. 1338-44. By contrast, Turner concedes she never even suspected Thompson's treatment of her was based upon race until *after* Thompson recommended on December 16 that she be fired.  Thus, no reasonable jury could find the circumstantial evidence convincingly suggests that race motivated Thompson's[4] actions.

## B.

Turner has also failed to make out a *prima facie* case that she was terminated in retaliation for complaining that Thompson had discriminated against her based on her race.  Title VII's anti-retaliation provision "makes it unlawful for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

---

[4] The evidence indicates that the FPCB's Executive Director, Thomas Wallace, not Thompson, actually fired Turner.  The FPCB suggests, albeit obliquely, that the termination cannot have been the result of intentional discrimination because Turner makes no allegation that Wallace had improper motives.  Nonetheless, throughout its briefs before this court and in its motion for summary judgment, the FPCB treated Thompson as the relevant decisionmaker and never asserted Turner's claims fail because he was not.  Thus, we treat any argument to that end forfeited. *E.g.*, *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 763 n.8 (11th Cir. 2006).

investigation, proceeding, or hearing under this subchapter.'" *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010) (quoting 42 U.S.C. § 2000e–3(a)).  "To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal link between the two."  *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012).

The district court concluded that Turner could not show her termination was causally related to any statutorily protected activity.  We agree.  Turner admits she never told anyone that she believed Thompson was treating her differently based upon her race until January 8.  That was after Thompson had recommended on December 16 that she be terminated.  Thus, her complaint cannot have triggered the termination.  Although Turner claims on appeal that she told Melton and others she felt harassed throughout her employment, she does not even argue those complaints could have put the FPCB on notice that she believed Thompson's actions were related to her race.  *See Coutu v. Martin Cnty. Bd. of Cnty. Com'rs*, 47 F.3d 1068, 1075 (11th Cir. 1995) (holding that employee's charge he was treated unfairly, without some allegation treatment was based on race, "did not constitute statutorily protected activity" because "[u]nfair treatment" alone "is *not* an unlawful employment practice under Title VII").  Indeed, as noted above, she only came to suspect Thompson's treatment of her had anything to do with race

9

after the termination decision was already made. Thus, because Turner cannot establish causality between any protected conduct and her termination, summary judgment was proper as to her Title VII retaliation claim.

C.

Turner also argues summary judgment was improper on her claim that the FPCB interfered with her rights under the FMLA by terminating her when she returned from leave. After careful consideration, we agree. "To prove FMLA interference, an employee must demonstrate that [s]he was denied a benefit to which [s]he was entitled under the FMLA," such as "the right following FMLA leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position." *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008) (quoting 29 U.S.C. § 2614(a)(1)(A)). "[T]he employer's motives are irrelevant" to an interference claim. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). But if the employer shows it would have terminated the employee had she not been on leave, then refusal to restore her to her prior position will not support an FMLA interference claim. *Id.*

The district court rendered summary judgment on Turner's FMLA interference claim finding that she "had no pending leave requests when she was terminated." But, as Turner points out on appeal, she did not claim the FPCB

10

prevented her from taking leave to which she was entitled, but rather that the FPCB failed to restore her to her job as the FMLA requires.[5]  Despite this, we may affirm the grant of summary judgment on any basis supported by the record.  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009).  The FPCB urges us to hold that the evidence shows it would have terminated Turner even had she not taken leave due to the performance deficiencies identified in the November 4 performance evaluation and December 16 progress report.  But Turner disputes that her performance was deficient in the ways outlined in those documents.  And for purposes of summary judgment, we must assume Turner's version of the facts is true.  *Kingsland*, 382 F.3d at 1227.  Further, as we more fully explain below, we cannot agree that the evidence unequivocally demonstrates Thompson had decided to fire Turner before learning that she intended to take FMLA leave.  Therefore, genuine issues of fact about whether the FPCB failed to restore Turner to her prior position as required under the FMLA, or instead would have fired her even had she not taken leave, preclude summary judgment on her interference claim.

## D.

Finally, we agree with Turner that a genuine issue of material fact exists as to whether she was fired in retaliation for taking FMLA leave.  "To prove FMLA

---

[5] The district court may have misconstrued Turner's theory of interference because Turner's discussion of it in her brief in opposition to summary judgment was so slight, including no citations and never referencing the restoration right.  Nonetheless, because the FPCB does not argue Turner forfeited the theory in the district court and instead argues the merits of her claim, we likewise address the merits.

retaliation, an employee must show that [her] employer *intentionally* discriminated against [her] for exercising an FMLA right." *Martin*, 543 F.3d at 1267. Where, as here, there is no direct evidence of discriminatory intent, we evaluate a claim of retaliatory discharge under the FMLA using the same burden-shifting approach employed in Title VII cases. *Id.* First, an employee must make out a *prima facie* case of FMLA retaliation by showing she engaged in activity the FMLA protects and suffered an adverse employment action causally related to that activity. *Id.* The burden then shifts to the employer "to articulate a legitimate reason for the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). "If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Martin*, 543 F.3d at 1268 (internal quotation marks omitted). To do so, "[t]he employee may rely on evidence that [s]he already produced to establish [her] *prima facie* case." *Id.*

The district court concluded Turner could not make out a *prima facie* case because she could not show a causal connection between her FMLA leave and termination. That conclusion was based upon the court's finding that Thompson had already recommended Turner's termination before he learned that she was

taking FMLA leave.  The timing, however, is ambiguous.  Thompson averred that he "told Ms. Melton that [he] recommended the termination" and that "Ms. Melton indicated that because Turner submitted a request for leave that day, the termination would not take place until Ms. Turner returned to work . . . ."  This shows Thompson learned of Turner's request and recommended her termination in the same meeting.  But an inference is necessary to decide what happened first, which we must necessarily make in Turner's favor.  *See Gowski*, 682 F.3d at 1310-11.  And while the progress report Thompson completed prior to learning of Turner's leave request indicates he was displeased with her progress, it nowhere mentions that she should be terminated.  We conclude based on the record before us that a reasonable jury could infer Thompson had not decided to recommend that Turner be terminated until after he was told she was approved to take FMLA leave.

The FPCB responds that, even if Turner has made out a *prima facie* case of FMLA retaliation, Turner was terminated for the substantial performance deficiencies and deteriorating working relationships Thompson outlined in the November 4 performance review and December 16 progress report.  But Turner has raised a genuine question as to whether those reasons were pretextual.  First and foremost, Turner testified in her deposition that none of the performance deficiencies Thompson identified, save the inappropriate email, actually existed.  And, construing the facts in Turner's favor, the temporal proximity was as close as

13

could be — within mere minutes.  Nothing in the memorandum Thompson delivered to Melton on December 16 indicated that he recommended her termination then, rather than at the completion of the planned 60-day reevaluation period.  So the evidence reasonably could be read to indicate he decided on the spot to seek her termination upon learning that she had invoked her right to take FMLA leave that extended through her probationary period.  In so doing, he cut short the time he had given Turner to improve and short-circuited the performance improvement plan he had previously outlined and explained to her.

*Martin* counsels that such evidence is adequate to create a jury issue over whether the employer's proffered reason for Turner's termination was pretextual.  There, just as here, an employee of several years received a poor performance evaluation and was placed on an improvement plan.  *Martin*, 543 F.3d at 1264.  Just as Turner did, Martin took FMLA leave prior to completing his improvement plan and, just as in Turner's case, the employer decided to fire Martin after he requested and was approved for leave but before he completed the improvement plan.  *Id.* at 1264-65, 1268.  Moreover, in this case, Thompson terminated the improvement plan early, on the same day he learned Turner would take FMLA leave.  Thus, the "temporal proximity between [her] leave and termination" is at least as probative of pretext as in *Martin*.  *Id.* at 1268.  Therefore, just as in that case, although the FPCB's "explanation may ultimately prove true, a genuine

14

dispute of material fact nonetheless remains" regarding whether Thompson was terminated in retaliation for exercising her FMLA rights.  *Id.*

## IV.

No reasonable jury could find Turner was discriminated against on the basis of her race or retaliated against for engaging in any conduct protected under Title VII.  But, based upon the evidence produced thus far, we conclude a jury could find the FPCB interfered with Turner's right to restoration under the FMLA and retaliated against her for seeking to exercise her right to FMLA leave.  Thus, for the foregoing reasons, we affirm the summary judgment rendered in the FCPB's favor on Turner's Title VII discrimination and retaliation claims, but vacate the district court's judgment on Turner's FMLA interference and retaliation claims and remand for further proceedings consistent with this opinion.

**AFFIRMED in part, VACATED and REMANDED in part**.